CITY OF CORALVILLE, Iowa, Barry
W. Bedford, and Kelly Hayworth,
Plaintiffs,

v.

IOWA DISTRICT COURT FOR
JOHNSON COUNTY,
Defendant.

No. 99–1185.

Supreme Court of Iowa.

Oct. 10, 2001.

676

Jim D. DeKoster and Kevin R. Rogers of Swisher & Cohrt, P.L.C., Waterloo, for plaintiffs.

Tom Riley and Anne Updegraff of Tom Riley Law Firm, P.C., Cedar Rapids, for defendant.

LARSON, Justice.

The issue before us is whether the district court properly ordered the production of evidence to be used in an underlying suit by a former police officer against the City of Coralville and various other defendants. The city and two of its employees (collectively city) challenge the order to compel discovery by filing this certiorari

action. We sustain the writ in part and annul it in part.

## I. *Facts and Prior Proceedings.*

Brittain B. Johnson, the plaintiff in the underlying tort case, was a police officer for the City of Coralville who arrested a man named Michael Constantino. On February 13, 1998, Constantino sued the city and Johnson under 42 U.S.C. § 1983 and common law for damages allegedly arising out of the arrest. On February 20, 1998, the Coralville assistant city attorney, Kirstene Diehl, met with Johnson and told him the city and its insurance carrier, EMC, had the statutory right and duty to provide an attorney for Johnson and the city. Diehl told Johnson that EMC ordinarily hired Cedar Rapids attorney Terry Abernathy to defend the city and its employees. She also gave Johnson the address and telephone number of EMC's claims supervisor. Diehl suggested that Johnson talk to the claims supervisor regarding legal representation. Johnson apparently did not call the claims manager but rather wrote Abernathy on February 22 to inform him that EMC should not pay the Constantino claim because it had no merit. On February 25, 1998, Abernathy replied by letter to Johnson and said he had not been hired to represent the defendants and that EMC was apparently handling the claim internally.

On February 27, 1998, a meeting was held at the Coralville City Hall to discuss the Constantino suit and an internal investigation involving Johnson. Brian Gruhn, a Cedar Rapids attorney who frequently represented the city in employment matters, was there. At that meeting, or soon thereafter, the assistant city attorney, Kirstene Diehl, authorized attorney Gruhn to file an appearance for the city and Johnson. Gruhn filed an appearance on March 2, 1998, and moved for additional time on

behalf of the city and Johnson. He filed a similar motion asking for the same relief on March 5, 1998.

On March 12 a second meeting was called at city hall to discuss the Constantino suit and the internal affairs investigation of Johnson. At this meeting, both attorneys Gruhn and Abernathy were present. On March 19, the court granted Gruhn's motion for additional time. Apparently no answer was ever filed, and on April 3, 1998, Constantino filed a dismissal with prejudice; the case had been settled. Johnson was upset about the insurance company's payment of $55,000 to Constantino, claiming this was an admission of Johnson's wrongdoing. He filed suit against EMC and the city, claiming if the case had been allowed to proceed to trial, a jury would have rejected Constantino's claim and Johnson would have been exonerated. Johnson complains that the city, through EMC, failed even to file an answer denying Constantino's allegations.

As part of Johnson's preparation for his suit against Coralville and EMC, he deposed the individuals present at the Coralville meetings on February 27 and March 12, questioning these individuals as to the statements made at those meetings. The city objected to these questions on the ground of attorney-client privilege, and it instructed the witnesses not to answer. Johnson sought and obtained an order compelling discovery, and the city filed this certiorari action. *See Hadjis v. Iowa Dist. Ct.,* 275 N.W.2d 763, 765–66 (Iowa 1979) (certiorari proper action to challenge ruling on discovery issue).

## II. *The Issue.*

■ The sole issue to be resolved is whether the discussions at the city hall meetings of February 27 and March 12 are subject to discovery. The city argues these discussions are privileged as communications between attorney and client. Johnson contends, and the district court ruled, that the communications may be discovered because attorney Gruhn represented both the city and Johnson, thus the discussions fall within an exception to the attorney-client privilege, known as the joint-client exception. The principle of this exception is explained:

When two or more persons, each having an interest in some problem, or situation, jointly consult an attorney, their confidential communications with the attorney, though known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world, that is, with parties claiming adversely to both or either of those within the original charmed circle. But it will often happen that the two original clients will fall out between themselves and become engaged in a controversy in which the communications at their joint consultation with the lawyer may be vitally material. In such a controversy it is clear that the privilege is inapplicable. In the first place the policy of encouraging disclosure by holding out the promise of protection seems inapposite, since as between themselves neither would know whether he would be more helped or handicapped, if in any dispute between them, both could invoke the shield of secrecy. And secondly, it is said that they had obviously no intention of keeping these secrets from each other, and hence as between themselves it was not intended to be confidential.

1 John W. Strong, *McCormick on Evidence* § 91, at 365–66 (5th ed.1999) (footnote omitted) [hereinafter *McCormick*].

■ While this statement of the principle has been couched in terms of clients who "jointly consult" an attorney, it is clear that actual consultation by both clients is not a prerequisite to the applica-

tion of the joint-client exception. *McCormick* § 91, at 366–67. Further,

> [w]here the statement is made directly to the attorney hired by the insurer, there is no question that the privilege applies in an action brought by a third person, nor does it seem disputed that there is no privilege where the controversy is between the insured, or someone claiming under him, and the company itself or the company's liability under the policy.

*Id.* at 367.

We have provided this rationale for the joint-client exception:

> It is simply that if it appears the secret or imparted communication is such that the attorney is under a duty to divulge it for the protection of the others he has undertaken to represent in the involved transaction, then the communication is not privileged.

*Henke v. Iowa Home Mut. Cas. Co.*, 249 Iowa 614, 619, 87 N.W.2d 920, 924 (1958).

In *Henke*, as in the present case, an insurance company hired an attorney to represent itself and its insured. 249 Iowa at 616, 87 N.W.2d at 922. The insurance company involved in *Henke*, which was later sued by its insured, denied that, by mere reason of the attorney's representation of the insured, an attorney-client relationship was established. We said:

> The contention is without merit. The fact that another selects and pays an attorney does not control the relationship of attorney-client. It may be a factor to be considered in proving that such relationship exists, but there are many other more important factors, such as the undertaking by the attorney, and the acceptance of his services by the other. When with due knowledge one assents to the appearance in court of an

attorney in his behalf, an attorney-client relationship must be presumed.

*Id.* at 617, 87 N.W.2d at 923.

 In a discovery dispute, the burden to establish an applicable privilege is on the party resisting discovery. If the privilege is established and the question becomes whether an exception to it applies, the burden of persuasion shifts to the proponent of the exception. *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000).

The evidence is undisputed that the assistant city attorney told Johnson on February 20, 1998, that the city and EMC would provide an attorney for Johnson, and Johnson did not protest. The assistant city attorney suggested that Johnson call EMC's claims manager about an attorney. Johnson then contacted Abernathy on the assumption Abernathy would be representing Johnson. Abernathy responded that he had not been hired to represent the defendants and that EMC was apparently going to handle it internally. Johnson apparently had no objection to who represented him; his only objection was voiced later as to the quality of the representation. EMC, he claimed, should not have tacitly admitted Johnson's wrongdoing by failing to file an answer to the Constantino petition and by settling the case by payment of $55,000.

To support his reliance on the joint–client exception, Johnson attempts to show attorney Gruhn was Johnson's lawyer as well as the city's lawyer on February 27, 1998, and March 12, 1998, the dates on which the city met with attorney Gruhn to discuss the Constantino suit. The city responds that clearly Gruhn was not Johnson's attorney on the earlier date because Gruhn did not file an appearance for Johnson until March 2. As to the March 12 meeting, the city responds:

Johnson admits that he never had any contact with Gruhn and was not aware that Gruhn had entered an appearance on his behalf until after the Constantino case was settled.... Because Johnson cannot show that he sought advise or assistance from Gruhn, and because Gruhn was engaged for the limited purpose of obtaining an extension of time to avoid default, there was never an attorney-client relationship between Johnson and Gruhn that could have resulted in a waiver of the City of Coralville's privilege at the March 12 meeting or after.

■ A. *The February 27 meeting.* We reject Johnson's claim that an attorney-client relationship existed as of the February 27 meeting. His argument is the relationship began before Gruhn filed his appearance on March 2, 1998, because the

[s]olicitation of Gruhn [by the city] and the decision for Gruhn to file an appearance on behalf of Britt [Johnson] most likely occurred at the February [2]7 meeting [where] it is clear that Britt [Johnson] and the Constantino lawsuit were discussed.

■ If Johnson and Gruhn had entered into a contract of employment as of February 27, Johnson's argument that the attorney-client relationship began on that date would have merit, but they did not have a contract between them then, or at any time. Gruhn undertook the defense of Johnson at the request of the assistant city attorney, a third party. This is sufficient, under *Henke,* to establish an attorney-client relationship, but it does not happen automatically. As we said in *Henke,*

[t]he fact that another selects and pays an attorney does not control the relationship of attorney-client [but it] may be a factor to be considered in proving that such relationship exists....

249 Iowa at 617, 87 N.W.2d at 923. We then said:

[B]ut there are many other important factors, such as the undertaking [of the representation] by the attorney, and the acceptance of his services by the other.

*Id.*

Applying this test, it is clear that, as of February 27, the date of the first meeting, there was not an attorney-client relationship between Gruhn and Johnson. There was no contract of employment, no "undertaking" by the lawyer, and no acceptance of the attorney-client relationship by Johnson, who did not even know of it. Because there was not an attorney-client relationship on February 27, 1998, the communications between the City of Coralville and its lawyer on that date are privileged because the joint-client exception is inapplicable. The district court erred in compelling discovery of the February 27 communications. As to that part of the order to compel, the writ of certiorari is sustained.

■ B. *The March 12 meeting.* By the time of the second meeting on March 12, there was an attorney-client relationship between Gruhn and Johnson that qualified for the joint-client exception. By that time, Johnson was aware that someone would represent him, having been informed by the assistant city attorney that the city had a legal obligation to provide a defense. More importantly, Gruhn was in fact representing Johnson because he had filed two appearances and motions prior to the March 12 meeting. Gruhn testified that, as of that date, he had not withdrawn his appearance. In fact, no other attorney entered the case for Johnson; as of the dismissal of Constantino's suit on April 3, Gruhn was still shown as the attorney of record. (The suit was apparently settled internally by EMC.) Gruhn had performed a valuable service for Johnson, as well as the city, by preventing a default judgment against them.

While in some situations joint clients' interests may be so intrinsically adverse as to make a finding of a joint-client relationship untenable, the critical time for determining whether an attorney-client relationship exists is when the relationship is formed. In *Ogden Corp.,* 202 F.3d at 457–58, Ogden and a group of creditors sought to collect amounts claimed by each against a common defendant. A dispute later arose about the allocation of the proceeds, and two of the banks filed suit against Ogden. A discovery issue arose as to whether the joint-client exception applied to the relationship between Ogden, the banks, and the attorney who was leading the collection effort. Ogden argued there was an "intrinsic" adversity that destroyed the parties' identity of interests and that this destroyed any joint-client relationship. *Id.* at 463. The court rejected this argument, stating:

> This argument is spun from whole cloth. At that crucial time—the time when [the attorney] and the banks tied the attorney-client knot—no one had expressed the view that the allocation provision in the restated assignment agreement was inscrutable, and there was no reason to believe that the beneficiaries of the insurance would part company when it came time to divide the proceeds. For aught that appeared, Ogden's interest was entirely congruent with [the banks']. No more was exigible: *the mere possibility of a future dispute did not prevent the formation of a valid joint client relationship.*

*Ogden Corp.,* 202 F.3d at 463 (emphasis added).

In the present case, as in the *Ogden Corp.* case, as of the time the appearance was filed on behalf of Johnson, there was no reason to believe that the city and Johnson, both benefited by Gruhn's appearance and motion for additional time, would part company when it came time to settle the suit. For all these parties understood, their joint interest was in avoiding a judgment against them. Johnson's complaint about the implications of EMC's settlement of the case did not create intrinsic adversity in the attorney-client relationship from the outset. Johnson's problems with EMC and the city, and his dissatisfaction with Gruhn's representation, did not arise until well after the March 12 meeting, when Johnson realized that EMC had allegedly impugned his reputation by settling the case. Thus, as of March 12, the joint-client exception to the attorney-client privilege applied.

We conclude that, as of the February 27 meeting, Johnson did not have an attorney-client relationship with Gruhn, but as of the March 12 meeting, he did. Accordingly, we sustain the writ as to the district court's order regarding evidence from the February 27 meeting but annul it as to the order for production of evidence from the March 12 meeting.

**WRIT SUSTAINED IN PART AND ANNULLED IN PART.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).