IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,

v.

N. Leroy WALTERS, Respondent.

No. 99–706.

Supreme Court of Iowa.

Dec. 22, 1999.

---

Norman G. Bastemeyer, and Charles L. Harrington, Des Moines, for complainant.

N. LeRoy Walters, pro se.

Considered by CARTER, P.J., and LAVORATO, SNELL, CADY, and SCHULTZ,* JJ.

SNELL, Justice.

This matter comes before the court from the Grievance Commission of the Iowa Supreme Court. On hearing, the Commission recommended a suspension of N. LeRoy Walters' license to practice law for a period of not less than six months. Our review is de novo as provided by Iowa Supreme Court Rule 118.10. Upon consideration, we now suspend Walters' license to practice law for a period of not less than three months.

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

## I. Commission Findings

The Commission found Walters in violation of several provisions of our Code of Professional Responsibility for Lawyers. They are as follows:

1. DR 5–104(A):

 A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

2. DR 1–102(A)(4):

 A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

3. DR 1–102(A)(5) and (6):

 A lawyer shall not:

 . . . .

 (5) Engage in conduct that is prejudicial to the administration of justice.

 (6) Engage in any other conduct that adversely reflects on the fitness to practice law.

The Commission found that the Iowa Supreme Court Board of Professional Ethics and Conduct had failed to prove the following ethical violations involving a conflict of interest. They are:

1. DR 4–101(B)(1) and (2):

 Except when permitted under DR 4–101(C), a lawyer shall not knowingly:
 (1) Reveal a confidence or secret of a client.
 (2) Use a confidence or secret of a client to the disadvantage of the client.

2. DR 5–105(B):

 A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(D).

3. DR 5–105(C):

 A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the representation of another client, except to the extent permitted under DR 5–105(D).

## II. Background Facts

Respondent Walters practiced law from 1965 until 1989 in Mason City, Iowa. From 1976 to 1989, he represented Lester and Venola Diegel as their attorney. He had a successful law practice and for many years was a partner in a major Mason City law firm.

About 1980, his wife was diagnosed with cancer. Treatment was provided continuously until her death in 1989. Although Walters had some health care insurance, it was inadequate to cover the large medical expenses. By 1989 he was $650,000 in debt. Walters testified that because he was physically and mentally exhausted, he decided to quit the practice of law and move to Minneapolis, seeking a new vocation and new life experience. He sold his home, one of two cars, liquidated his assets, and paid off all but $20,000 of his debts.

In Minneapolis, Walters became a licensed real estate agent. The hope for a successful career in this field, unfortunately, did not materialize. He decided to return to Mason City to resume the practice of law and sold his second car to finance the resumption of his legal career. Faced with minimal income and continuing expenses, he endeavored to borrow money. He thought a bank loan was unlikely and therefore looked for a private source. Contacting the Diegels in December 1991, he solicited and received a personal loan of $10,000. About January 1992, he received another loan of $5000. Each loan was evidenced by a promissory note bearing ten percent interest payable June 30, 1992.

When obtaining these loans, Walters did not advise the Diegels to consult independent counsel, and he did not advise them that his own interest in the transaction might affect his professional judgment on their behalf. Walters testified that since he was not currently practicing law, it did not occur to him that his borrowing money from an ex-client might be a violation of professional ethics.

Walters testified that he used the $10,000 loan to pay debts incurred for his daughter's college tuition, two semesters delinquent, and the $5000 loan for another semester's expenses.

Walters failed to make payments on the notes; Diegels sued on the notes. On March 13, 1993, a settlement was reached whereby Walters agreed to pay $500 per month until the interest and principal on the loans was satisfied. He also agreed to pay $275 in court costs, and to pay the Diegels' attorney fees. Walters made the first payment but the check for the second installment was returned for insufficient funds. The Diegels subsequently obtained a default judgment for $15,839.86 plus interest, attorney fees, and costs. They then filed a complaint against Walters with the Board of Professional Ethics and Conduct. Two notices to respond to the Board's charges were served on Walters, who failed to reply.

Other charges stem from Walters' conduct in 1995, when he represented Keri Helps in a dissolution of marriage action. After the decree was entered, he undertook to represent her ex-husband, Rodney Helps, in an involuntary hospitalization proceeding brought by his father. Later, Walters filed an application on behalf of Keri Helps seeking to hold Rodney in contempt and to enjoin him from contact with Keri and their minor child.

### III. Standard of Proof

 We review this record de novo. Ct.R. 118.10. The Board has the burden of proving the charges by a convincing preponderance of the evidence. *Iowa Su-*

*preme Ct. Bd. of Prof'l Ethics & Conduct v. Evans,* 537 N.W.2d 783, 784 (Iowa 1995).

### IV. Analysis

#### A. Soliciting Money From Former Client

 Upon review of the record we find that the ethical violations involved in the borrowing of money from the Diegels have been proved. The language of DR 5–104(A) pertains to this violation. Our rules of conduct apply as long as the attorney has influence arising from a previous attorney-client relationship and the client is looking to the attorney to protect the client's interests. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sikma,* 533 N.W.2d 532, 537 (Iowa 1995). In order to prove a violation, it is not necessary to show that the lawyer acted with bad or fraudulent intent. *See, e.g., Committee on Prof'l Ethics & Conduct v. Mershon,* 316 N.W.2d 895, 899 (Iowa 1982). Nor is it necessary to show that the client suffered economic harm. *Committee on Prof'l Ethics & Conduct v. Postma,* 430 N.W.2d 387, 392 (Iowa 1988); *Committee on Prof'l Ethics & Conduct v. Baker,* 269 N.W.2d 463, 466 (Iowa 1978). Full disclosure requires the lawyer to explain why the client should consult independent counsel before deciding whether to enter into the transaction. *Sikma,* 533 N.W.2d at 535–37. A violation of DR 4–101(B)(3) occurs when a lawyer has gained knowledge of a client's financial resources during the course of an attorney–client relationship and later uses that knowledge to solicit funds from the client. *Id.* at 536.

#### B. Bad Check Charge

 The Board charged Walters with violating DR 1–102(A)(4) which proscribes conduct including dishonesty, fraud, deceit, or misrepresentation. The Commission found that writing the bad check to the Diegels violated this disciplinary rule. The Board cites *Committee on Professional Ethics & Conduct v. Cody,* 412 N.W.2d

637 (Iowa 1987), to support this charge. In *Cody*, the lawyer defendant pled guilty to two counts of theft in the third degree for writing bad checks to obtain office supplies for a corporate business he owned. We held the ethical violations were proved and ordered a license suspension of two and one-half years.

In testimony before the Commission, Walters stated that he did not intentionally write a check to the Diegels with the knowledge that it was not going to clear the bank. The check was returned for insufficient funds, and Walters testified he did not know why there was not sufficient money in the bank when he wrote the check. He also stated he did not do anything to try to make the check good.

In *Cody*, we noted the defendant claimed he did not intend to defraud anyone. Nevertheless, Cody was dishonest in his business dealings. We also stated that it is not necessary for the Board to prove the respondent was acting as a lawyer at the time of the alleged misconduct. Lawyers do not shed their professional responsibility in their personal lives. *Cody*, 412 N.W.2d at 639.

We have considered in other cases actions by lawyers that bear on our analysis here. In *Committee on Professional Ethics & Conduct v. Hall*, 463 N.W.2d 30 (Iowa 1990), a lawyer signed promissory notes falsely representing to the bank that the loans were to be used to purchase laying hens. The money was used for other purposes and was never repaid. The Commission found this conduct violated numerous disciplinary rules and we agreed.

In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Hansel*, 558 N.W.2d 186 (Iowa 1997), the lawyer was in default on a bank debt and entered into an agreement with the bank to sell calves, collect payment for corn and apply the proceeds to the bank debt. Instead, he used the money for other purposes. We found these transactions were dishonest

and violated DR 1–102(A)(4), the charge in the case at bar, which prohibits lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Other states have viewed similar acts as violations of a lawyer's disciplinary rules. The Minnesota Supreme Court, in *In re Pokorny*, 453 N.W.2d 345 (Minn.1990), commented as follows:

> Respondent admittedly issued an insufficient funds check in payment of fees assessed for one of his nonappearances and then failed to issue a substitute check until an ethics complaint was filed against him. The referee concluded this conduct violated Minn .R.Prof. Conduct 8.4(c) (dishonest, deceitful or fraudulent conduct). Further, because the debt was directly related to respondent's law practice, the referee considered it conduct prejudicial to the administration of justice in violation of Minn.R.Prof. Conduct 8.4(d). Respondent maintains he should not be subject to discipline because the insufficient funds check was inadvertent and isolated. *See In re Gubbins*, 380 N.W.2d 810, 811–12 (Minn. 1986) (four-month suspension for issuing 217 NSF checks, along with other misconduct, although no client loss); *In re Larson*, 324 N.W.2d 656, 658–59 (Minn. 1982) (series of NSF checks, misrepresentation and misappropriation warrants disbarment).

> The Director concedes issuance of one bad check by itself arguably would not warrant public discipline. Respondent's misconduct, however, is not isolated but occurred in conjunction with other rule violations. Moreover, while anyone may mistakenly write an insufficient funds check, the context here is more serious. Respondent failed to pay the fees within the requisite time period, then issued the bad check. After being notified the check was returned for insufficient funds, he failed to issue a substitute check—although he said he would—until

Wilson filed an ethics complaint against him.

*Pokorny,* 453 N.W.2d at 347.

The West Virginia Supreme Court of Appeals took a similar view. Here, the lawyer issued a bad check to a travel agency. The court said:

> Where an attorney writes a worthless check under circumstances that demonstrate "dishonesty ... or misrepresentation" under DR 1–102(A)(4) or "conduct that adversely reflects on [the] fitness to practice law" under DR 1–102(A)(6), disciplinary punishment is warranted. It should be shown that the attorney was either aware that the check was worthless when it was written or failed to make it good within a reasonable period of time after the attorney was aware that there were insufficient funds.
>
> . . . .
>
> His action, at the very least, reflects adversely on his fitness to practice law under DR 1–102(A)(6). It requires no extensive discussion to demonstrate that an attorney who either knowingly issues a bad check or delays making it good indulges in conduct that dishonors the practice of law. The public perception of lawyers cannot be served when they fail to pay their checks.

*Committee on Legal Ethics v. Taylor,* 187 W.Va. 39, 415 S.E.2d 280, 283 (W.Va.1992); *see also Lawyer Disciplinary Board v. Swisher,* 203 W.Va. 603, 509 S.E.2d 884 (W.Va.1998) (failure to make any payment on a note signed by the lawyer as part of an agreement settling a legal malpractice case during five years following the agreement dishonors the practice of law).

In the case at bar, Walters, by means of the settlement agreement with the Diegels, was able to forestall the progress and determination of their suit commenced for the payment of Walters' notes. Ultimately, the Diegels were forced to continue their lawsuit and obtain a judgment to collect the debt owed. We find that Walters' conduct in this matter constituted a violation of DR 1–102(A)(4), as charged by the Board.

### C. Conflict of Interest

■ This charge arose out of Walters' representation of Rodney Helps. The record shows that the district court was advised by Walters of this possible conflict of interest and advised Walters to continue to represent Keri Helps in hopes the parties would work out their disagreements. If they did not, the court suggested that Walters withdraw from representing Keri Helps and advise her to seek other counsel. That is in fact what Walters did when the parties failed to reconcile their differences. Walters testified that he had not obtained confidential information through his earlier representation of Rodney that could in any way have prejudiced Rodney in the later contempt hearing in which he was an advocate for Keri. Nor was there any information known by Walters that was not known by Keri. Walters also stated that he was initially reluctant to withdraw because Keri was in an advanced state of pregnancy and bedridden.

> The relevant disciplinary rules here are: DR 4–101(B)(1) and (2) ( [A] lawyer shall not knowingly reveal a confidence or secret of a client or use a confidence or secret of a client to the disadvantage of a client).
> DR 5–105(B) and (C) (A lawyer shall not accept or continue multiple employment if the exercise of professional judgment in behalf of the client will be or is likely to be adversely affected by the representation of another client).

■ We examined the law regarding conflicts of interest in *Richers v. Marsh & McLennan Group,* 459 N.W.2d 478 (Iowa 1990). The general rule is that an attorney should be disqualified from representing a party against a former client if the two representations bear a "substantial relationship" to each other. *Richers,* 459 N.W.2d at 481. If such a relationship is found, then the court will assume that the attorney obtained information in the first

representation that is relevant to the subsequent litigation. It need not be shown that confidences and secrets were divulged in order for a conflict to exist.

Apart from confidentiality issues, conflict of interest and loyalty concerns are implicated. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Winkel*, 599 N.W.2d 456, 458–59 (Iowa 1999), we held a violation of DR 5–105(B) occurred when the lawyer unilaterally withdrew from representing his client in a bankruptcy proceeding and then represented another party who sued his former client in a personal injury action. For a law firm to represent one client today, and the client's adversary tomorrow in a closely related matter, creates an unsavory appearance of a conflict of interest that is difficult to dispel in the eyes of the lay public or even the bench and bar. *See Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983).

Although the Commission thought otherwise, we find that Walters' alternating representation of Rodney and Keri Helps constituted an ethical violation as charged. The Commission gave considerable weight for its conclusion that the district judge did not initially see this matter as serious enough to constitute a violation. Even so, the court warned Walters of the later possibility of a violation. We believe that Walters properly consulted with the court, but given the obviously close relationship between the two cases in which he undertook to represent opposing parties, he should have avoided the potential conflict of interest. His reliance on an inconclusive consultation with the district judge was ill-advised and does not excuse the ethical violation.

### D. Failure to Respond to Board Inquiries

Walters failed to respond to Board inquiries regarding alleged ethical violations. Those violations involve DR 1–102(A)(5) and (6). Walters offered no rational explanation for this failure. We find this violation has occurred and is proved. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sather*, 534 N.W.2d 428, 431 (Iowa 1995).

### V. Disposition

Our findings of ethical violations result in a suspension of the lawyer's license. We suspend respondent's license to practice law indefinitely with no possibility of reinstatement for a period of three months from the date of this opinion. As a condition for application for reinstatement, Walters shall have paid in full the judgment entered as a result of the loan transaction with the Diegels. Costs of this instant action are assessed against Walters pursuant to Iowa Supreme Court Rule 118.22.

**LICENSE SUSPENDED.**