Jane DOE, by John DOE and Mary Doe, Her Father and Mother and Next Friends, and John Doe and Mary Doe, Individually, Appellants,

v.

### PERRY COMMUNITY SCHOOL DISTRICT, Arthur Pixler, and Russell Gronewold, Appellees.

No. 01–1883.

Supreme Court of Iowa.

Sept. 5, 2002.

---

Paige Fiedler of Fiedler & Townsend, P.L.C., Johnston, for appellants.

Larry D. Spaulding and Samara R. Sarno of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

STREIT, Justice.

Litigants in a civil sexual abuse case against a school district want the court to stop their lawyer's new law firm from representing the school district in the litigation. The law firm, Bradshaw, Fowler, Proctor & Fairgrave, P.C., argues it has implemented a screening mechanism sufficient to prevent the disclosure of confidential information between the disqualified associate, Jason Palmer, and the other members of the firm. The district court found adequate screening procedures were in place to ensure there was no actual conflict between the other members of the firm and its client. Because the representations by Palmer for the plaintiffs and the Bradshaw law firm for the defendants bear a substantial relationship to each other, we reverse and remand.

## I. Facts and Background

Russell Alan Gronewold, an eighth-grade teacher at Perry Middle School was convicted of sexually abusing Jane Doe, one of his fourteen-year-old students. Attorney Brent Cashatt of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler served as Doe's guardian *ad litem* in the criminal case. Attorney Jason Palmer was an associate with the Smith law firm at that time and appeared as the Does' attorney.

Doe and her parents retained Cashatt, Palmer, and Jan Mohrfeld to represent them in their civil suit against Gronewold, the Perry Community School District, and principal Arthur Pixler. Palmer attended a pre-petition conference with the clients. He prepared a draft of the petition using the clients' file, including internal memo-

randa. Palmer signed the petition and it was filed on February 26, 2001.

On March 21, 2001, members of Bradshaw, Fowler, Proctor & Fairgrave, P.C., appeared on behalf of the school district and Pixler. Palmer joined the Bradshaw firm in August 2001. Because of the conflict between Bradshaw's current representation of the defendants and Palmer's prior representation of the Does, Palmer filed a motion to withdraw as counsel for the Does.

The Does filed a motion to disqualify the Bradshaw firm based upon Palmer's prior representation of the Does in the same lawsuit. The district court denied the motion. The court presumed confidences were divulged by the Does to Palmer in the prior representation which may be relevant to the current representation. However, the court found it was clear Bradshaw ensured there was no actual conflict by creating a "Chinese Wall." The court further noted to disqualify Bradshaw at this stage of the proceedings would deny the defendants counsel of their choice and place them at a disadvantage in the lawsuit. We granted the Does' application for interlocutory appeal.

## II. Scope of Review

■ We review a ruling on an attorney disqualification motion for abuse of discretion. *Richers v. Marsh & McLennan Group Assocs.*, 459 N.W.2d 478, 481 (Iowa 1990). An abuse of discretion exists when the court's ruling is based on clearly untenable grounds. *Id.*

## III. The Merits

■ This case presents an issue of first impression in Iowa. We must determine whether a screening mechanism known as a Chinese Wall is sufficient to allow a law firm to eliminate the conflict of an attorney who switched sides of representation during the same case. In general, an attorney must be disqualified from representing a party against a former client if the two representations bear a "substantial relationship" to each other. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters*, 603 N.W.2d 772, 777 (Iowa 1999). Here, Bradshaw contends its implementation of a Chinese Wall is sufficient to avoid disqualification of the entire law firm. Before we turn to the main issue, we briefly address the use of screening mechanisms to allow a law firm to continue its representation of a client even though a conflict may exist.

In Iowa, we have not specifically dealt with the use of Chinese Walls in the attorney disqualification context.[1] However, the Iowa Supreme Court Board of Professional Ethics and Conduct has endorsed the use of screening procedures. The Board first approved the use of screening procedures where appropriate in Formal Opinion 87–33, June 10, 1988. It stated,

Screening is the process through which a disqualified lawyer is isolated from other lawyers in the firm so that the firm can try to avoid disqualification. Some courts have modified the imputed disqualification rule [that any knowledge a disqualified attorney holds is imputed to the members of his or her law firm so as to disqualify the entire firm] by holding that in some instances the presumption of shared confidences may be rebutted by use of an effective screening mechanism to cordon off the disqualified lawyer, thereby preventing that lawyer from tainting the other members of the

---

1. Other jurisdictions have refused to recognize the use of Chinese Walls as a defense to an imputed disqualification. *See, e.g., Roberts v. Hutchins*, 572 So.2d 1231, 1234 (Ala.1990); *Lansing–Delaware Water Dist. v. Oak Lane Park, Inc.*, 248 Kan. 563, 808 P.2d 1369, 1377 (1991); *Koch v. Koch Indus.*, 798 F.Supp. 1525, 1539 (D.Kan.1992).

law firm. The screening procedure is commonly referred to as a "Chinese Wall."

*Id.* (quoting ABA/BNA Lawyer's Manual on Professional Conduct 51:2004 (1986)). The Board of Professional Ethics and Conduct stated in appropriate situations carefully monitored screening policies and procedures can be effective. The Board has approved the use of the Chinese Walls to prevent disqualification of the entire law firm in various circumstances. *See, e.g.,* Formal Op. 98–18 (Feb. 25, 1999) (Chinese Wall sufficient where conflict was fully disclosed and the clients consented); Formal Op. 98–09 (Dec. 3, 1998) (Chinese Wall sufficient to prevent disqualification of firm attorneys from practicing in juvenile court in same county where associate previously worked as assistant county attorney in adult and juvenile courts); Formal Op. 91–47 (May 18, 1992) (Chinese Wall sufficient where an associate could be shielded from the firm's cases over which the associate's husband, the Iowa Commissioner of Insurance, had jurisdiction); Formal Op. 87–33 (June 10, 1988) (Chinese Wall sufficient to screen new associate who is the wife of a department or division head in a state agency from the other members of the firm). Bearing in mind the purpose and use of a Chinese Wall, we now turn to the main issue.

We must determine whether the circumstances of this case require the Bradshaw firm's disqualification from its representation of the school district and principal. Once the Does prove there is a substantial relationship between the former and current representations, there is a presumption the attorney must be disqualified. Any knowledge a disqualified attorney holds is imputed to the members of his or her law firm so as to disqualify the entire firm. *Hoffmann v. Internal Med., P.C.,* 533 N.W.2d 834, 836 (Iowa Ct.App.1995); Iowa Code of Prof'l Responsibility for Lawyers DR 5–105(E) ("If a lawyer is required to decline employment or to withdraw from employment, no partner or associate of the lawyer or the lawyer's firm may accept or continue such employment."); 7A C.J.S. *Attorney & Client* § 164, at 238 (1980).

The Does do not need to show confidences were actually disclosed by Palmer to prove a conflict exists. *Walters,* 603 N.W.2d at 778; 7A C.J.S. *Attorney & Client* § 162, at 236. To show the Bradshaw firm must be disqualified, the Does must only prove there is a substantial relationship between the former and the present representation. *Richers,* 459 N.W.2d at 481. In determining whether a substantial relationship exists, we consider: (1) the nature and scope of the prior representation; (2) the nature of the present lawsuit; and (3) whether the client might have disclosed a confidence to her attorney in the prior representation which could be relevant to the present action. *Hoffmann,* 533 N.W.2d at 837. The former client must be given the presumption confidences were disclosed. *See, e.g., Richers,* 459 N.W.2d at 482 (abuse of discretion existed where district court did not give former client the presumption that confidences were disclosed).

Bradshaw admits a substantial relationship exits between the two representations. Palmer's former representation of the Does and Bradshaw's current representation of the defendants involve the same case. Palmer filed a motion to withdraw from the current litigation because of his previous participation in the Does' case. The pending lawsuit includes allegations that the school district and principal knew Gronewold molested Doe but did nothing to stop the continual harassment and abuse. Such issues necessarily involve sensitive and confidential information.

The Does likely disclosed confidences to Palmer in the prior representation which would certainly be relevant in Bradshaw's defense of the school district and principal. *See id.* As such, we conclude there is a substantial relationship between the former and the present representations. This determination alone requires disqualification of the Bradshaw firm.

■ Because of the strong appearance of impropriety, once we conclude a substantial relationship exists between the two representations, disqualification cannot be avoided. *See* 7A C.J.S. *Attorney & Client* § 159, at 229. Our rules of professional responsibility allow us to consider the appearance of impropriety as one factor in an attorney disqualification analysis. "Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to laypersons to be unethical." EC 9–2. "Every lawyer owes a solemn duty ... to strive to avoid not only professional impropriety but also the appearance of impropriety." EC 9–6.

■ In examining whether the appearance of impropriety exists, the mere possibility of impropriety is insufficient to warrant disqualification. *See State v. Vanover*, 559 N.W.2d 618, 628 (Iowa 1997) ("Standing alone, an appearance of impropriety is not enough to justify disqualification, but it is a factor a trial judge may consider."). The appearance of impropriety "cannot be a fanciful, unrealistic or purely subjective suspicion of impropriety that requires disqualification. The appearance of impropriety must be real." *Clinard v. Blackwood*, 46 S.W.3d 177, 187 (Tenn.2001) (quoting *United States v. Smith*, 653 F.2d 126, 128 (4th Cir.1981)). We will look through the perspective of a reasonable layperson to decide whether an appearance of impropriety exists. *See id.* The appearance of impropriety is strong, especially in cases where the representations are identical and the subject matter involves sensitive and confidential information. Here we have such a case.

The extent of Palmer's involvement in the prior representation is clear. Palmer first appeared in this case as Does' attorney. One on occasion, Palmer met with Mr. and Mrs. Doe to discuss whether the Does should file a civil law suit. Palmer had telephone conversations with the Does. He signed pleadings and entered his appearance on behalf of the Does. Brent Cashatt, Jane Doe's guardian *ad litem*, testified "confidences were exchanged." Paige Fiedler joined the Smith attorneys in the lawsuit only a few days prior to the date the Does filed their lawsuit. Cashatt stated that prior to Fiedler taking over, Palmer had done most of the work on the case. Palmer drafted the petition in the civil suit. In drafting the petition, Palmer had access to the entire case file, including all internal memoranda, correspondence to and from the Does, and attorney notes from confidential meetings, and telephone calls with the Does. The Smith law firm ultimately filed Palmer's draft of the petition with some revisions. Though there is some question regarding whether Palmer drafted the exact petition filed, there is no doubt Palmer signed the filed petition.

Given these circumstances, we find a reasonable layperson would conclude Bradshaw's current representation would compromise the integrity of the trial and would harm the Does. This conflict before us did not arise as the result of Palmer's prior representation in a different, unrelated matter. *Clinard*, 46 S.W.3d at 188. Rather, Palmer's firm now stands as adversary against the Does in the very litigation in which Palmer first served as their trusted attorney. When Palmer left the Smith firm, he stopped advocating for the Does by taking a new position clearly adverse to their best interests.

To analogize to baseball, [Palmer] has not only switched teams, he has switched teams in the middle of the game after learning the signals. That [Palmer] has been benched by his new team does little to ameliorate the public perception of an unfair game.

*Id.* For a lawyer to represent the Does today, and the defendant school district and principal tomorrow in the same litigation "creates an unsavory appearance of a conflict of interest that is difficult to dispel in the eyes of the lay public or even the bench and bar." *Walters,* 603 N.W.2d at 778. Despite the attempted screening, continued representation constitutes a threat to the adversarial process and creates an undeniably strong appearance of impropriety.[2]

Though Bradshaw concedes there is a substantial relationship between the prior and current representations, it attempts to minimize the degree of Palmer's involvement in the plaintiff's case and emphasizes the steps it took to lessen his contact with the defense. Specifically, Bradshaw argues the use of a Chinese Wall allows the firm to avoid imputed disqualification. Bradshaw contends it has taken precautionary measures to prevent disclosure of confidential information. The firm asserts Palmer, now at the Bradshaw firm, has no involvement in or access to the Does' case. Bradshaw contends it has taken and will continue to take "appropriate safeguards to completely isolate Mr. Palmer from involvement in or knowledge about this case."

The presence or absence of a Chinese Wall does not enter into our analysis of whether there is a substantial relationship between two representations. We consider whether a substantial relationship exists based upon the nature and scope of the prior representation, the nature of the present lawsuit, and whether confidences may have been disclosed. *Hoffmann,* 533 N.W.2d at 837. If we determine a substantial relationship exists, then unequivocally, the law firm must be disqualified. This is such a case. This is not a case where Palmer did not have involvement in the case prior to his switch to Bradshaw. As discussed above, Palmer's involvement was substantial, significant, and intimate. A Chinese Wall will not prevent the conclusion that a substantial relationship exists and Palmer's new firm cannot continue to represent the defendants.

If, however, we conclude a substantial relationship does not exist, then we examine whether the firm has taken any measures to prevent disclosure of confidential information. Certain procedures must be followed to constitute a sufficient screening mechanism to prevent the potential disqualification of the firm. Such screening procedures must be timely implemented to protect confidential client information. We must also look at the nature and extent of the screening mechanism to determine whether it is adequate to prevent dissemination of confidential information between its new employee and the law firm.

Under the facts before us, even if we concluded there is not a substantial relationship between the representations, that would not guarantee Bradshaw the ability to continue its current representa-

**2.** Bradshaw argues the interests in avoiding the appearance of impropriety are outweighed by interests in preventing a chilling effect on the practice of law. The firm contends the practice of law will be severely affected because clients will no longer be free to choose their own counsel. As a result, attorneys may become unwilling to represent certain clients or hire laterally for fear of the potential of future conflicts. The list of horribles is unrealistic and not supported by the facts before us.

tion. It appears Bradshaw implemented the Chinese Wall only *after* the Does filed their petition to disqualify the firm. There is no evidence to suggest Bradshaw took any steps to prevent Palmer from divulging the Does' confidences to the other Bradshaw attorneys prior to that time. There is also little evidence to prove Bradshaw implemented procedures to prevent the other Bradshaw attorneys from discussing sensitive matters regarding the present lawsuit.[3] We presume Palmer and the Bradshaw lawyers will act within the confines of our rules of ethics and professional responsibility. However, confidence in attorneys alone does not overcome the strong appearance of impropriety in cases such as this where the litigation involves sensitive and confidential matters.

## IV. Conclusion

We approve of the use of Chinese Walls under certain circumstances to overcome imputed disqualification of a law firm. Such circumstances do not exist in this case. There is a substantial relationship between the former and present representations. Accordingly, it is improper for Bradshaw to continue its representation and it must be disqualified. We conclude the district court abused its discretion in denying Does' petition to disqualify Bradshaw. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except TERNUS, J., takes no part.

---

**3.** Most of the steps taken were designed to stop any of Bradshaw's clients' information from flowing to Palmer rather than Palmer imparting his knowledge to Bradshaw. The only evidence of a screening mechanism is the use of case management software to restrict Palmer's access to the Bradshaw documents. This alone is insufficient to conclude Bradshaw's Chinese Wall is adequate to allow it to continue representation of the school district and principal.