# IN THE COURT OF APPEALS OF IOWA

No. 17-1472
Filed January 9, 2019

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**MARC AARON HANSLIP,**
　　　Defendant-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.

The defendant appeals his convictions for being a felon in possession of a firearm and possession of an offensive weapon, both enhanced by the defendant's status as an habitual offender. **AFFIRMED.**

Rees Conrad Douglas, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., McDonald, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Marc Aaron Hanslip appeals his convictions for being a felon in possession of a firearm and possession of an offensive weapon, both enhanced by the defendant's status as an habitual offender. He contends the trial court erred in overruling his hearsay objections at trial and in denying his counsel's motion to withdraw from representation due to an alleged conflict of interest. On our review, we find the trial court did not err and affirm the convictions.

I. Factual background.

On the afternoon of March 17, 2017, a man later identified as Thaddeus Keefer called Sioux City police to report there was a man carrying a shotgun, wearing a blue hat and blue shirt, pounding on the door to his residence.[1] Within minutes, police responded to the residence and saw two men and a woman standing near a silver, four-door Chevrolet Impala parked in front of the residence.[2] One of the men was Marc Hanslip. He was wearing a blue hat and blue shirt. A police officer described Hanslip as wearing "all blue."

Two officers went to the residence and spoke with Keefer about his call to 911. He was "very fearful" and "[d]idn't want to show his face in public." As one officer testified, Keefer "was definitely scared for that particular moment in time." He was "very hesitant," "stuttering," "looking over his shoulder," and "very excited." As another officer testified, "[The man] was very excited. Pacing around. Kept making sure that nobody could see him talking to [the officers]. Fidgeting a lot. Very erratic behavior." "Before he had a chance to calm down," Keefer told officers

---

[1] At the time of trial, Keefer could not be located to testify.
[2] The woman was later identified as Stephanie Chavez.

he was afraid of the man with the shotgun and did not want to let him inside the house.

At trial, Hanslip objected based on hearsay to the officers testifying to what Keefer told them, since the State did not produce Keefer at trial. The court overruled the objections based on the excited utterance exception urged by the prosecutor as well as "existing physical state or presence as exceptions."[3] The officer was then permitted to answer, "While [he] was still upset and in an excited condition," Keefer told officers the shotgun was "smaller" and had "white tape wrapped around . . . where you would hold the shotgun at." Keefer identified the man in blue—Hanslip—as the man with the shotgun.

While officers were talking to Keefer, other officers also approached the three persons by the Impala. They obtained a written consent to search the Impala from Ms. Chavez.[4] Officers observed a large box of shotgun shells in plain view on top of three bags in the back seat. Officers then decided to obtain a search warrant to further search the vehicle and the bags. Once the search warrant was obtained, they seized and later searched the three bags at the police station. Inside one of the bags, officers found Hanslip's social security card, his wallet, and a small-barreled shotgun with white tape on the handle as described by Keefer. The barrel of the shotgun measured fourteen and seven-eighths inches long. At the time, Hanslip admitted to the officers that the bags and the shotgun were his.

---

[3] See Iowa R. Evid. 5.803(3). The State on appeal does not advance the "then existing physical state or condition" exception in Iowa Rule of Evidence 5.803(3) as supporting the admission of this testimony.

[4] The Chevrolet Impala was registered to Ms. Chavez's mother.

But at trial, Hanslip testified that he had lied to police about the shotgun and denied ownership and possession.

## II. Procedural background.

On March 22, 2017, the county attorney filed a supplemental trial information charging Hanslip in count I with being a felon in possession of a firearm, in violation of Iowa Code section 724.26(1) (2017); in count II, possession of an offensive weapon, in violation of section 724.3; and count III, possession of a controlled substance, in violation of section 124.401(5). The county attorney also filed a trial information alleging an habitual-offender enhancement applied to counts I and II, under section 902.8. On July 20, Hanslip through his counsel filed a written guilty plea to count III, possession of a controlled substance. Trial on the other two charges was set for July 25.

On July 24, defense counsel filed a motion to withdraw as Hanslip's attorney. The motion asserted that the prosecutor had notified defense counsel the same day of an intent to call Stephanie Chavez as a rebuttal witness if Hanslip testified.[5] The motion was based on Chavez being represented by an attorney from the same public defender office as Hanslip's attorney, although her charges did not arise out of the events and were not related to the charges Hanslip faced. Hanslip's attorney asserted that a conflict existed under Iowa Rules of Professional Conduct 32:1.7 and 32:1.10. Hanslip's counsel argued the remedy to the potential conflict was to prohibit the State from calling Chavez as a rebuttal witness. Hanslip

---

[5] The notice also included Adam Harding, the other person who was with Marc Hanslip and Stephanie Chavez. He was not represented by the public defender office so he is not pertinent to the conflict issue.

also refused to further waive his right to speedy trial. The court held what is sometimes referred to as a *Watson*[6] hearing on July 24 and, immediately following the hearing, ordered the public defender representing Chavez be removed from representing her and Hanslip's attorney to have no contact with Chavez's file in the public defender office. The court rejected Hanslip's counsel's alternative to bar the State from calling Chavez in rebuttal.

On July 25, trial commenced and Hanslip stipulated to the prior convictions that supported the habitual-offender enhancements. During the trial, before Hanslip testified, counsel again raised the conflict issue, renewed the motion to withdraw, and again asserted the issue be resolved by barring the State from calling Chavez as a rebuttal witness. The court denied the renewed motion and reaffirmed its earlier ruling. Hanslip testified and denied ownership or possession of the shotgun. Chavez testified in rebuttal, where the State asked just four questions. When asked whether the shotgun was hers, she answered, "No, it is not."

On July 26, the jury found Hanslip guilty of felon in possession of a firearm and possession of an offensive weapon. On August 4, Hanslip's counsel filed motions in arrest of judgment and for new trial, raising the hearsay rulings and the attorney conflict or withdrawal issue. On September 6, the court issued its ruling and denied the post-trial motions. The court later sentenced Hanslip as an habitual offender on counts I and II to two concurrent terms of fifteen years and on count III to seven days with credit for time served. Hanslip timely filed his notice of appeal.

---

[6] *See State v. Watson*, 620 N.W.2d 233 (Iowa 2000).

III.     Discussion.

    A.  Whether the district court erred in overruling defense counsel's hearsay objections based on the excited utterance exception.

Standard of Review.  There is a question as to what standard of review applies.  Our supreme court has said, "We review hearsay rulings for correction of errors at law and will reverse the admission of hearsay evidence as prejudicial unless the contrary is shown.  We review all other evidentiary rulings for an abuse of discretion." *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014) (citations omitted).  But in *Dudley*, when specifically discussing the admissibility of an excited utterance, the supreme court stated, "We review the admissibility of an excited utterance for an abuse of discretion." *Id.* at 680.  Since excited utterance is an exception to excluding hearsay testimony, it is unclear why there is a difference in the standard of review.  The supreme court mentioning both standards of review in *Dudley* as applying to the hearsay/excited utterance admissibility issue that we must address in this appeal leaves room for confusion.  Yet, in subsequent cases, the supreme court has applied the rule that hearsay rulings—including whether a statement falls within an exception to the hearsay rule—are reviewed for correction of errors at law.  *See State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017) ("Hearsay rulings, however, are reviewed for errors at law.  This standard of review extends to determining whether statements come within an exception to the general prohibition on hearsay evidence." (citation omitted)); *State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016) (discussing excited utterance evidence the court maintained, "Although we normally review evidence-admission decisions . . . for an abuse of discretion, we review hearsay claims for correction of errors at law."). In *Smith*,

the court clarified, "[T]he question whether a particular statement constitutes hearsay presents a legal issue, leaving the court no discretion on whether to admit or deny admission of the statement." 876 N.W.2d at 184 (citation omitted). This suggests our review will not look for an abuse of discretion.

In its brief, the State acknowledges recent cases indicate hearsay rulings are reviewed for correction of errors at law but disagrees and believes that hearsay, like all other evidentiary objections, should be reviewed for an abuse of discretion, citing *State v. Weaver*, 554 N.W.2d 240, 247 (Iowa 1996): "The court has broad discretion in deciding evidentiary issues, including admissibility of hearsay evidence . . . . We generally review the admissibility of evidence . . . for abuse of discretion." However, in *State v. Hallum*, our supreme court specifically distinguished *Weaver*, stating,

> We have on prior occasions reviewed the admission of hearsay evidence for abuse of discretion. *See, e.g.*, . . . *State v. Weaver*, . . . . Recently, however, we stated such rulings should be reviewed for correction of errors of law. *See State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998). We adhere to our decision in *Ross* and review the trial court's admission of Medina's statement for correction of errors of law.

585 N.W.2d 249, 253–54 (Iowa 1998) *overruled on other grounds by Hallum v. Iowa*, 527 U.S. 1001 (1999). We note the supreme court transferred this appeal to our court. As has been repeated frequently, the court of appeals is not at liberty to stray from existing supreme court precedent. *See, e.g.*, *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent."). We apply the prevailing rule and review for correction of errors at law.

The State also contends the defense waived this first issue for review on appeal because the appellant's brief does not comply with Iowa Rule of Appellate Procedure 6.903(2)(g)(1), requiring "[a] statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided." We note appellant's brief quotes extensively from the trial transcript that includes the defense hearsay objections. We find the appellants did not waive the issue.

Hearsay is a statement "(1) The declarant does not make while testifying at the current trial or hearing; and (2) A party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). Hearsay is inadmissible unless an exception applies. Iowa R. Evid. 5.802. One such exception is an "excited utterance." Iowa R. Evid. 5.803(2). An "excited utterance" is defined as a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* "The rationale behind the exception is that statements made under the stress of excitement are less likely to involve deception than if made upon reflection or deliberation." *State v. Tejeda*, 677 N.W.2d 744, 753 (Iowa 2004).

> [T]he trial court [in ruling on the applicability of this exception to a particular statement], . . . should consider:
> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009) (quoting *State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999)). "The court must consider all the factors to

determine if the statements are admissible." *Dudley*, 856 N.W.2d at 679 (citing *State v. Hy*, 458 N.W.2d 609, 611 (Iowa Ct. App.1990)).

(1) The time lapse between the event and the statement. Hanslip first contends Keefer's statements did not qualify as excited utterances because there was sufficient time for Keefer to settle down from when he first called 911 to when officers arrived and talked to him. Hanslip points out that one of the officers testified, "But I think we were able to calm him down after two to three minutes of conversation with him to try to get—get more information from him."[7] However, as the transcript reveals, the officers arrived within one to two minutes of the call and, "[b]efore he had a chance to calm down," the man told officers that he was afraid of the man in blue with the shotgun and did not want to let him inside the house.

Hanslip also argues the context of Keefer's emotional state must be viewed from events of the previous day. Officers testified that later during their discussion, Keefer indicated Hanslip had been to his residence on the previous day. Hanslip contends this should be considered as the start of events and that under case law, such a lengthy time period removes Keefer's comments from the excited utterance exception. The cases Hanslip relies upon where the excited utterance exceptions were rejected involved lapses of time greater than the few minutes involved here. *See Dudley*, 856 N.W.2d at 675 (holding a thirty-six-hour lapse was too long to fall within the excited utterance exception); *Tejeda*, 677 N.W.2d at 754 (thirty minutes);

---

[7] This testimony was from Sergeant Dane Wagner, who had directed two other officers to interview Keefer while the sergeant participated in securing the vehicle. He did not go to the residence and talk to Keefer until three to five minutes later. Even when Sergeant Wagner talked to Keefer, he observed Keefer was excited and scared.

*State v. Cagley*, 638 N.W.2d 678, 680 (Iowa 2001) (less than an hour)[8]; *see also United States v. Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000) (three hours after events).

The record shows that officers found Keefer to be in an excited state when they first encountered him after the 911 call. Whether Keefer had interacted with Hanslip on the previous day may be one of the factors to consider in determining his excited condition, but it does not prevent such a finding. Hanslip's pounding on Keefer's door while holding the shotgun qualifies as a "startling event or condition" as required by the excited utterance exception regardless of the interaction between them on the previous day.

(2) Questioning versus volunteered statements. Based upon our review of the trial transcript, particularly the testimony of Officer Eric Davis, who was one of the first two officers to approach Keefer within minutes of the 911 call, Keefer volunteered information almost identical to what he had stated during his call to the 911 dispatcher. It was not in response to officer questioning.

(3) Age and condition of the declarant. There is limited information in the trial record regarding Keefer. It can be determined that he is a male adult. There is intimation that he may have been a methamphetamine dealer. Hanslip argues, "It is not clear whether Keefer's fear resulted from an actual incident and how much from his own possible (though admittedly unproven) meth use." This argument—

---

[8] We note—further contributing to the confusion—the supreme court in *Cagley* acknowledged, "[W]e have characterized these decisions [whether a statement falls within the hearsay exception for excited utterances] as being reviewable for abuse of discretion," but the court ultimately applied a substantial evidence standard, "giving 'deference' to the district court's factual findings." 638 N.W.2d at 681.

that Keefer was high on methamphetamine instead of excited by Hanslip pounding on Keefer's front door while armed with a sawed-off shotgun—is wholly unsupported by the record. Hanslip's brief concedes such a claim is "admittedly unprove[d]." We need not give it any further consideration.

(4) Characteristics of the event being described. The event described by Keefer was Hanslip pounding on Keefer's front door while armed with a sawed-off shotgun and wanting to gain entry. This would be the kind of startling event likely to generate an excited condition and result in an excited utterance.

(5) Subject matter of the statement. Keefer's statement to officers was substantially the same as what he told the 911 dispatcher—that a man in blue was pounding on his front door and had a shotgun. The additional information related by Keefer when officers arrived was that the weapon was a small shotgun with white tape around the handle where it would be held. The subject matter of the statement is directly related to the event that caused the excited condition.

The prosecution established an evidentiary foundation concerning Keefer's excited condition to qualify his statements to the officers as "excited utterances" under Iowa Rule of Evidence 5.803(2), an exception to the hearsay rule. After applying the five-prong test in *Harper*, we determine the trial court did not commit legal error in overruling defense counsel's objection as the record supported the proffered testimony were excited utterances and a recognized exception to hearsay.

B. Whether the district court erred in denying Hanslip's counsel's motion to withdraw.

The parties agree on the standard of review: "The question of whether a conflict exists is a mixed question of fact and law." *State v. Mulatillo*, 907 N.W.2d 511, 517 (Iowa 2018). The constitutional dimension of the legal question is reviewed de novo. *Id.* The district court has discretion to determine whether the case presents an actual conflict of interest or a serious potential for a conflict, so we review the conflict-of-interest determination of the district court for an abuse of discretion. *Id.* "The district court's 'factual findings in disqualification cases will not be disturbed on appeal if they are supported by substantial evidence.'" *Id.* at 518 (internal quotation marks omitted) (citing *Bottoms v. Stapleton*, 706 N.W.2d 411, 415 (Iowa 2005)).

As to issue preservation, the State contests Hanslip's reliance on article I, section 10 of the Iowa Constitution, arguing that at trial defense counsel only raised a challenge based on the Sixth Amendment to the United States Constitution with no reference to the state constitution. On appeal, Hanslip concedes the state constitution was not raised at trial, however he argues we may consider the state constitution issue even though it was not raised before the trial court, citing *State v. Ingram*, 914 N.W.2d 794 (Iowa 2018) as support.

Upon our review, we find *Ingram* does not support Hanslip's position and, in fact, supports the opposite proposition. The supreme court held that in order to be considered on appeal, the state constitution must be raised at the trial court level. 914 N.W.2d at 800–01. Further, if it was not raised at trial, we may only consider the state-constitution issue on appeal if it is raised as an ineffective-

assistance-of-counsel claim. *Id.* Here, there was no mention of the state constitution at the trial level, and an ineffective-assistance-of-counsel claim is not raised in this appeal. "Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal." *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003)*; see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). The state-constitution issue has not been preserved for this appeal and we may only consider the Sixth Amendment claim.

This appeal involves a determination of whether a conflict existed when one attorney from a public defender office represented Hanslip and another attorney in that same office represented a potential State witness against Hanslip—who had charges pending in an unrelated case. The court held a pre-trial hearing on the conflict issue to perform a forward-looking analysis of the case in order to assess the likelihood that a potential conflict might transform into an actual conflict. Thus, the district court had to perform its analysis under the "serious potential for conflict" standard. *See McKinley*, 860 N.W.2d 874, 881 (Iowa 2015). "A serious potential for conflict occurs when the record indicates an actual conflict is likely to arise." *Id.* at 881.[9] An actual conflict of interest under the Sixth Amendment is one "that adversely affect[s] counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002); *see State v. Smitherman*, 733 N.W.2d 341, 347 (Iowa 2007) (adopting the *Mickens* definition of "actual conflict of interest" in Iowa).

---

[9] For an analysis of the development of Iowa case law on the attorney conflict issue, see *Ibarra v. State*, No. 14-2007, 2015 WL 6508952, at *5–10 (Iowa Ct. App. Oct. 28, 2015).

At the time of the pre-trial *Watson* hearing, the conflict did not yet exist; it would only develop *if* the State called Chavez as a rebuttal witness. The court determined that a serious *potential* for conflict existed and resolved it by removing the public defender attorney representing Chavez[10] and ordering Hanslip's counsel not to access Chavez's public defender file in that office.[11] The trial court confirmed that Hanslip's public defender had not obtained personal knowledge from a review of Chavez's file or conversations with her co-workers about Chavez or her pending case, which was unrelated to Hanslip's charges.

Hanslip concedes the trial court resolved the conflict issue by removing the public defender from Chavez's case and implementing the Chinese Wall. These have previously been recognized by our state appellate courts as proper remedies for conflict situations. *See McKinley*, 860 N.W.2d at 881; *Smitherman*, 733 N.W.2d at 347; *Ibarra*, 2015 WL 6508952, at *5–10. In addition, in *McKinley*, our supreme court further refined how courts should view and remedy conflict situations regarding public defenders and representation of defendants and witnesses. 860 N.W.2d at 881. The court pointed out that there is a difference when there is either a lack of temporal overlap or attorney overlap. *McKinley*, 860 N.W.2d at 885. In Hanslip's case, there was very limited temporal overlap and there was no attorney overlap; the public defender representing Hanslip at no time represented Chavez.

---

[10] The court appointed a private attorney outside the public defender office to take over representing Chavez.

[11] This is often referred to as creating a Chinese Wall between the attorney representing the defendant and the attorney representing the witness and that witness's office file. *See, e.g., Doe ex rel. Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 600 (Iowa 2002).

Relying on the *Watson* case, Hanslip contends that even though the trial court addressed and resolved the potential conflict, the court's failure to make a record with Hanslip and failure to obtain his waiver of the potential conflict his attorney would have in cross-examining Chavez requires reversal and a new trial. As noted above, we are only addressing a Sixth Amendment claim. Thus, Hanslip cannot obtain reversal and a new trial simply on a claim that the trial court failed to make a record as to Hanslip's waiver of the conflict. He must show that there was an actual conflict and it adversely affected his counsel's performance:

> We need not determine the validity of the defendant's alleged waiver because we find the defendant has failed to show his counsel's performance was adversely affected by the alleged conflict of interest in this case. As a result, he has not established a violation under the Sixth Amendment or the Iowa constitution and is not entitled to a new trial.

*Smitherman*, 733 N.W.2d at 350. Hanslip has failed to do so. The court made inquiry and our review of the record discloses that his trial counsel's performance in cross-examining Chavez was not adversely affected.

> Notably, there was no evidence in the record "tending to establish any confidence or secret learned during the public defenders' prior representations of the witnesses on unrelated matters" that would be used against the witnesses or materially benefit the defendant's defense. Therefore, we found no actual conflict of interest or serious potential for an actual conflict of interest existed.

*Mulatillo*, 907 N.W.2d at 520 (citations omitted). The trial court did not err in denying Hanslip's attorney's motion to withdraw.[12]

---

[12] We also note Hanslip offhandedly argues that the trial court violated his rights under the Sixth Amendment by failing to make a record as to either his waiver of a right to independent counsel or a waiver of a right to speedy trial. Hanslip's trial counsel used the motion to withdraw as a trial tactic in conjunction with Hanslip's refusal to waive speedy trial in an attempt to obtain a ruling from the court that the State be barred from calling Chavez as a rebuttal witness. Since the trial commenced within the speedy trial deadline,

IV.     Conclusion.

Finding the trial court did not err in its excited utterance evidentiary ruling nor in its denial of Hanslip's counsel's motion to withdraw based on a claimed conflict of interest, we affirm Hanslip's convictions.

**AFFIRMED.**

---

there was no need to make a record as to Hanslip's further waiver of speedy trial rights. As to Hanslip's claim of a right to independent counsel for making a record as to his waiver of his trial counsel's conflict of interest, this was addressed adversely to his claim in *Ibarra*, 2015 WL 6508952, at *11, and need not be further discussed here.

The State argues in its brief that we should hold—as have numerous other state and federal courts—that a public defender office is not the same as a private law firm and representation of defendants and witnesses by attorneys within the same public defender office does not create a conflict of interest. Since we resolve this appeal without having to address the state's argument, we leave it for another day.