706 N.W.2d 360 (2005)
IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD, Complainant,
v.
Bradley Bernhardt HOWE, Respondent.
No. 05-0468.
Supreme Court of Iowa.
November 18, 2005.
*363 Charles L. Harrington and Teresa Vens, Des Moines, for complainant.
*364 Mark McCormick of Belin Lamson McCormick Zumbach Flynn, A P.C., Des Moines, for respondent.
TERNUS, Justice.
The complainant, Iowa Supreme Court Attorney Disciplinary Board, formerly the Iowa Supreme Court Board of Professional Ethics and Conduct, filed disciplinary charges against the respondent, Bradley Howe, a part-time city attorney for the city of Spencer, Iowa. In count I, the Board alleged Howe violated the Iowa Code of Professional Responsibility for Lawyers by filing charges in more than 170 misdemeanor cases that were not supported by probable cause. In count II, the Board asserted Howe engaged in unethical conduct by defending Michael Mouw against a burglary charge filed by the Spencer police department, by representing Mouw on three other charges Howe prosecuted as the assistant city attorney, and by representing Mouw in a collateral proceeding before the Iowa Department of Transportation (DOT). Similar claims were made in count III and count IV. In count III, the Board claimed Howe represented two defendants, John Towe and John Shields, against charges filed by the Spencer city police, and in count IV, the Board alleged Howe represented two defendants, Lance Larson and Mavis Olin, in cases that Howe was responsible for prosecuting as the assistant city attorney.
After taking evidence, the Grievance Commission of the Iowa Supreme Court ordered the dismissal of the count alleging the filing of factually unsupported misdemeanor charges. The Commission found Howe had committed ethical infractions with respect to the conflict-of-interest charges involving Mouw, Towe and Shields, and recommended a public reprimand for this misconduct. The Commission ordered that a private admonition be issued concerning Howe's representation of Larson and Olin.
The matter is now before this court for decision. We find the Board has proved all four counts of its complaint. While we give respectful consideration to the recommendations of the Commission, we think the misconduct that occurred in this case warrants suspension of Howe's license to practice law in this state for four months.

I. Scope of De Novo Review.

Initially, we address Howe's contention this court is without power to review the two counts on which the Commission did not recommend discipline. He asserts the Board was required to appeal from the Commission's disposition of those charges in order to invoke our review. In essence, Howe suggests that a multi-count disciplinary case must be treated for purposes of review as if each count were a separate proceeding. We disagree.
A disciplinary proceeding against an attorney is initiated by the filing of a "complaint" with the Commission. See Iowa Ct. R. 35.5. A complaint contains specific "charges ... of the misconduct alleged to have been committed." Id. Iowa Court Rule 35.9 sets out the authority of the Commission at the "conclusion of a hearing upon any complaint against an attorney." The Commission has three options: (1) "dismiss the complaint"; (2) "issue a private admonition"; or (3) recommend discipline in the form of a reprimand or a suspension or revocation of the attorney's license. Iowa Ct. R. 35.9 (emphasis added). If the Commission recommends discipline, it must file a report with the supreme court stating its findings of fact, conclusions of law, and recommendations. Id. "If the grievance commission dismisses the complaint or issues a private admonition, no report shall be made to the supreme court," with exceptions not pertinent *365 here. Id. (emphasis added). The Commission's determination to dismiss the complaint or issue a private admonition becomes final unless the Board applies for permission to appeal. Id.
It is apparent from the language used in rule 35.9 that the dismissal option available to the Commission is to dismiss the complaint, not simply one count of the complaint. Thus, when the Commission is presented with multiple charges and concludes that discipline is warranted with respect to any of those charges, the Commission must file a report with the supreme court addressing the Commission's findings, conclusions and recommendations on the entire complaint. There is nothing in rule 35.9 that empowers the Commission to dispose of the complaint in a piecemeal fashion through separate orders, as occurred here. Therefore, once the Commission has decided to recommend some discipline, the entire case comes to this court for review.
The respondent places much reliance on a sentence in Iowa Court Rule 35.11(2), a provision addressing appeals filed by the Board. That rule states: "If such an appeal is from the grievance commission's dismissal of a complaint, or any charge contained therein, or a decision to issue a private admonition, such appeal shall remain confidential." (Emphasis added.) Howe apparently believes the emphasized language confirms the ability of the Commission to dismiss a charge as opposed to the entire complaint, and implies that the Board must file an appeal in order to obtain review of the dismissal of a charge. We do not read rule 35.11(2) in this way. The rule's reference to "any charge contained therein" simply recognizes the Board's discretion when appealing the Commission's dismissal of a complaint. If there are multiple charges in the dismissed complaint, the Board may choose to appeal only some of the charges dismissed by the Commission and acquiesce in the dismissal of the other charges.
Finally, we note our prior cases bear out our interpretation of rule 35.9. In several cases, this court has reviewed all charges, including those that the Commission believed should be dismissed or only warranted a private admonition, even though the Board had not appealed. See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera, 626 N.W.2d 107, 109, 111-12 (Iowa 2001); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner, 621 N.W.2d 183, 185 (Iowa 2001); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters, 603 N.W.2d 772, 777-78 (Iowa 1999); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson, 595 N.W.2d 132, 135 (Iowa 1999); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel, 558 N.W.2d 186, 187 (Iowa 1997). Howe claims this procedure is unfair because an attorney who is willing to accept the Commission's findings of fact "has no reason or basis to appeal," yet is "at risk of reversal of favorable commission findings without the benefit of participation in the appellate process."
Unlike a decision in a typical case tried in the district court, Commission reports come to the supreme court for review even when neither party has filed an appeal. See Iowa Ct. R. 35.10. Thus, an appeal in the context of a disciplinary proceeding is simply a mechanism that allows for briefing by the parties. While it may be true that an attorney who accepts the Commission's factual findings would not necessarily feel the need to appeal, there is nothing in the rules that precludes an attorney from doing so under those circumstances. If a respondent has the desire to participate in the appellate process either to challenge or support the Commission's report, he or she can do so by filing a brief, *366 an opportunity automatically accorded a respondent who appeals.[1]
In summary, we believe the rules anticipate that if the Commission does not dispose of the entire complaint by dismissal or private admonition, all charges come to the supreme court for final disposition. The Commission's action in the present case in filing orders dismissing one count of the complaint and issuing a private admonition on another count was contrary to rule 35.9 and is of no effect. We will consider the dismissal and private admonition as recommendations of the Commission. Because the action of the Commission may have misled the respondent with respect to the matters that were before the court for review, we have allowed both parties to file briefs addressing the counts that were the subject of the Commission's separate orders. Having reviewed those briefs, we now address the charges alleged in the Board's complaint.

II. Scope of Review.

Our review is de novo. See Iowa Ct. R. 35.10(1). "Under this standard of review, we give weight to the factual findings of the Commission, especially with respect to witness credibility, but we find the facts anew." Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman, 674 N.W.2d 129, 131 (Iowa 2004). Although we respectfully consider the discipline recommended by the Commission, the final decision on the appropriate sanction is for this court. Id. The Board bears the burden to prove the allegations of misconduct by a convincing preponderance of the evidence. Id.

III. General Factual Background.

Bradley Howe has been licensed to practice law in the State of Iowa since 1975. He is a general practitioner, and since 1976 has also served as an assistant city attorney for the City of Spencer. As an assistant city attorney Howe is primarily responsible for prosecuting simple misdemeanor charges filed by the Spencer city police alleging violations of the city code. He testified that virtually everything he does as an assistant city attorney "involves working with the police."
By all accounts, Howe is respected in his community and is known as a hard-working, honest attorney. Howe has a reputation for being trustworthy, forthright, and fair. He has not previously been disciplined for an ethical violation.
The Board filed the present complaint on November 18, 2004, in four counts. We will discuss each charge separately.

IV. Count I: Misdemeanor Charges Not Supported by Probable Cause.

A. Allegations of complaint and Commission decision. In count I, the Board alleged that on numerous occasions the respondent amended traffic citations to charge violations of the cowl-lamp statute found in Iowa Code section 321.406. (This statute was incorporated into the city ordinances by Spencer City Ordinance 7-2-7B.) Defendants would subsequently enter guilty pleas to the amended charges, notwithstanding the fact there was no factual basis for the pleas. The Board alleged Howe knew there was no factual basis for the charges and that the charges were not supported by probable cause.
*367 The Board asserted this conduct violated several provisions of the Iowa Code of Professional Responsibility for Lawyers: (1) DR 7-102(A)(2), (5), (6) and (7), which states a lawyer shall not knowingly advance a claim that is unwarranted, knowingly make a false statement of law or fact, participate in the creation of evidence that the lawyer knows to be false, or counsel or assist a client in conduct that the lawyer knows to be illegal or fraudulent; (2) DR 7-103(A), which states a public prosecutor "shall not institute or cause to be instituted criminal charges when the lawyer knows or it is obvious that the charges are not supported by probable cause"; and (3) DR 1-102(A)(1), (4) and (5), which states a lawyer shall not violate a disciplinary rule, engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, or engage in conduct that is prejudicial to the administration of justice. The Commission believed this count should be dismissed.
B. Factual findings. The facts at issue in this count are undisputed. The respondent admitted that from January of 1998 through February of 2004, he successfully moved the court to amend 174 citations that originally charged violations of a city ordinance to allege violations of the cowl-lamp statute. The amendments were made as part of plea bargains with the defendants after the respondent had obtained permission for the charge reduction from the police officers writing the original citations. Typically, the city would agree to reduce a simple misdemeanor moving traffic violation to a simple misdemeanor cowl-lamp violation; in return, the defendant would plead guilty to the amended citation.[2]See generally Iowa Code § 321.482 (2005) (stating violations of chapter 321 are simple misdemeanors unless otherwise declared). A plea agreement was generally sought by the defendant to avoid an adverse impact on the defendant's license or auto insurance. In each instance, the amendment was allowed and the guilty plea was accepted by Magistrate Nancy Whittenburg, now a district court judge.
Apparently the idea of reducing simple misdemeanors to cowl-lamp violations did not originate with Howe and Whittenburg. Their predecessors in Clay County had used this format for plea bargaining for many years. Howe testified he had facilitated such plea agreements since he began working as an assistant city attorney in 1976.
The cowl-lamp statute, a remnant from a long-ago era, states that a motor vehicle "may be equipped with not more than two side cowl or fender lamps which shall emit an amber or white light without glare." Iowa Code § 321.406. As Howe acknowledged, vehicles have not been equipped with cowl or fender lamps "for a considerable number of years."
The respondent admitted he knew there was no probable cause to believe this offense had been committed by the 174 persons charged with violating this law, but he did not think he was doing anything illegal or wrong by allowing defendants to plead guilty to these fictitious charges. He thought that as long as the charging police officer agreed to the deal and the reduction benefited the defendant, the plea bargains were consistent with his obligation as a prosecutor to see that justice was done. His actions were always above *368 board. Magistrate Whittenburg testified she understood at the time she accepted the guilty pleas that there was no factual basis for them. She believed none was required for simple misdemeanors.
C. Ethical violations. We think the respondent's conduct clearly violated the Iowa Code of Professional Responsibility. DR 7-103(A) states that a prosecutor "shall not institute or cause to be instituted criminal charges when the lawyer knows or it is obvious that the charges are not supported by probable cause."[3] There is no dispute in the present case that the cowl-lamp charges were not supported by probable cause and that the respondent knew it. Probable cause for a criminal charge means that the circumstances would support a belief by a reasonable person that the defendant committed the crime with which he is charged. Cf. State v. Tague, 676 N.W.2d 197, 201 (Iowa 2004) (defining probable cause needed for arrest); Webster's Third New International Dictionary 1806 (unabr. ed. 2002) (defining "probable cause" as "a reasonable ground for supposing that a criminal charge is well-founded"). Howe, by his own admission, did not believe that any of the defendants charged with a cowl-lamp violation had committed that crime; he knew they had not. The fact that the original traffic citations may have been supported by probable cause is beside the point because Howe is not being disciplined for instituting the original charges. His ethical violation arises from the amended charges alleging cowl-lamp violations, which clearly lacked probable-cause support.
Likewise, the fact that plea bargains to lesser or related charges are authorized by our rules of criminal procedure is also irrelevant. See Iowa R.Crim. P. 2.10(1) (authorizing plea bargains in which prosecutor makes a "charging ... concession" (emphasis added)). Howe is not being disciplined for allowing the defendant to plead guilty to a reduced charge. Again, his ethical violation is filing an amended charge that is not supported by probable cause. Rule 2.10(1) does not expressly or impliedly nullify the probable-cause requirement of our ethics rules.
Howe also claims he did not act unethically because there is no Iowa case or rule requiring that there be a factual basis for guilty pleas to simple misdemeanors. But whether or not the guilty plea must be supported by a factual basis is a different question from whether or not the charge must be supported by probable cause.[4]See ABA Annotated Model Rules of Professional Conduct 395 (5th ed. 2003) (stating ethical obligations delineated in comparable model rule 3.8 are distinct from constitutional protections afforded criminal defendants) [hereinafter "Annotated Rules"]. As the Annotated Rules states, filing a charge without probable cause "may subject a prosecutor to professional discipline regardless of whether the underlying conduct violates a defendant's constitutional *369 right," or, we might add, a rule of criminal procedure. Id. The Iowa Code of Professional Responsibility applies to a prosecutor's charging decision, and the code is clear on the prosecutor's ethical obligation: probable cause is required. The fact that a defendant may plead guilty to a traffic citation without a court determination that there is a factual basis for the plea simply heightens the duty on the prosecutor to file only those charges that are supported by probable cause.
Although not determinative of a lawyer's ethical duties, an ethics opinion issued by the Iowa Supreme Court Board of Professional Ethics and Conduct in 1988 should have alerted the respondent to the ethical problem inherent in the custom of reducing traffic citations to cowl-lamp charges. In that opinion the board concluded a prosecutor cannot ethically file charges not supported by probable cause:
[I]t is improper for a prosecuting lawyer and for a defendant's lawyer to enter into a plea agreement under which a prosecutor files charges that are not supported by underlying facts and to which the defendant agrees to plead or is expected to plead guilty.
Plea Bargaining  Plea not Supported by Facts, Iowa Ethics Opinion No. 87-13 (Feb. 12, 1988) (citing DR 7-103(A)) [hereinafter "Iowa Ethics Opinion No. 87-13"]. The respondent's suggestion that this ethics opinion is inapplicable to him because the opinion did not consider the necessity of a factual basis for simple misdemeanor guilty pleas is unpersuasive. Again, the issue here is whether the respondent could ethically prosecute charges for which he knew there was no probable cause. That obligation was explicitly spelled out in DR 7-103(A): a prosecutor must have probable cause for charges he institutes or causes to be instituted. Importantly, this ethical requirement is unqualified by the nature of the offense being charged.
Howe claims that DR 7-103(A) "applies to the initiation of a prosecution rather than to a charge resulting from an amendment made pursuant to a plea bargain at the request of and for the benefit of the defendant." We disagree. DR 7-103(A) is not limited to charges instituted by the county attorney. It also prohibits the prosecutor from causing to be instituted criminal charges that are not supported by probable cause. See DR 7-103(A) (stating prosecutor "shall not institute or cause to be instituted ..."). It is undisputed that the cowl-lamp charges resulted from motions filed by Howe in which he sought to amend the citation issued by the officer to charge a violation of the cowl-lamp statute.[5] Clearly, Howe's conduct falls within the reach of the disciplinary rule because he caused the amended cowl-lamp charges to be filed. The respondent cannot escape responsibility for his actions simply because he acted with the express or implied approval of the officer filing the original charge. As Howe himself testified, the officers had no authority to amend a charge; Howe was the only one who could accomplish that. It was also Howe, not the police officers, who was subject to the ethical obligations imposed on lawyers by the Iowa Code of Professional Responsibility. Notably, the Code does not provide for an exception to DR 7-103(A) when law enforcement authorities acquiesce in the *370 filing of charges not supported by probable cause. Similarly, it is not a defense that the magistrate approved the amended charges knowing there was no factual support for them. See Ky. State Bar Ass'n v. Smith, 503 S.W.2d 482, 482 (Ky.1973) (per curiam) ("Regardless of whether, as the respondent says, this practice was understood, accepted and condoned by the regular judge of the Louisville Police Court, even the greenest lawyer must know that it is unethical. If it has been countenanced it must be stopped.").
Finally, to the extent Howe asserts he believed plea-bargained charges were outside the scope of DR 7-103(A), such a belief was unjustified in view of the 1988 opinion of the Ethics Board stating that it was unethical for a prosecutor "to enter into a plea agreement under which [the] prosecutor files charges that are not supported by underlying facts." Iowa Ethics Opinion No. 87-13. In any event, Howe's ignorance of his ethical obligation is no defense. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner, 621 N.W.2d 183, 188 (Iowa 2001) ("[I]gnorance of the law or erroneous advice does not excuse a breach of ethics by a lawyer."); accord In re Devaney, 870 A.2d 53, 57 (D.C.2005) ("[A]n attorney is presumed to know the ethical rules governing his behavior, and ignorance neither excuses nor mitigates a violation."); Office of Disciplinary Counsel v. Au, 107 Hawai`i 327, 113 P.3d 203, 216 (2005) ("`[M]ere ignorance of the law constitutes no defense to its enforcement.' `This maxim holds particularly true for lawyers who are charged with notice of the rules and the standards of ethical and professional conduct prescribed by the [c]ourt.'" (Citations omitted.)); In re Cheronis, 114 Ill.2d 527, 104 Ill.Dec. 225, 502 N.E.2d 722, 725-26 (1986) ("A common maxim holds that ignorance of the law is no excuse, and this is particularly true in a case where the person who claims lack of knowledge of a relevant directive is a practicing attorney."); State ex rel. Neb. State Bar Ass'n v. Hollstein, 202 Neb. 40, 274 N.W.2d 508, 517 (1979) ("We have repeatedly recognized the ancient maxim that ignorance of the law is no excuse.... It applies with even greater emphasis to an attorney at law who is expected to be learned in the law." (Citation and internal quotation marks omitted.)); Whelan's Case, 136 N.H. 559, 619 A.2d 571, 573 (1992) ("We hold that lawyers, upon admission to the bar, are deemed to know the Rules of Professional Conduct.").
Howe disputes the applicability of DR 7-103(A) for the additional reason that, in his view, the purpose underlying this disciplinary rule is not implicated by the facts shown here. He asserts the requirement of probable cause imposed by DR 7-103(A) is intended to ensure a prosecutor does not use improper or overreaching methods to obtain a conviction. See Annotated Rules 395. There was no overreaching in the 174 cases in which Howe charged violations of the cowl-lamp statute, he argues, because the defendants agreed to the filing of these charges. But the improper use of prosecutorial discretion is just as possible in plea bargaining as it is in the initial charging decision. See Charles W. Wolfram, Modern Legal Ethics § 13.10.3, at 762 (practitioner's ed. 1986) ("Through discretionary plea bargaining..., a prosecutor can bestow extraordinarily important benefits on persons who are thereby coerced into cooperation with the prosecutor.") [hereinafter "Modern Legal Ethics"]. In addition, all ethical responsibilities serve the common goal of safeguarding public confidence in the courts. See Iowa Code of Prof'l Responsibility preamble and scope [6] (stating "a lawyer should further the public's ... confidence *371 in the rule of law and the justice system"). Filing charges that are blatantly bogus  even when defendants are willing to plead guilty to them  does not promote confidence in the integrity of the judicial process. For these reasons, DR 7-103(A) contains no exception to the probable-cause requirement for charges resulting from plea bargains.
This court's conclusion that the respondent's conduct was improper should not be applied too broadly. Certainly prosecutors have the authority to negotiate plea bargains, and may ethically reduce a charge in exchange for a defendant's guilty plea to the reduced charge. The only restriction placed on this process by DR 7-103(A) is the requirement that any charge  original or reduced  be supported by probable cause. Oftentimes in a plea bargaining situation, probable cause will be supplied by the defendant's admission. In the cases at issue here, however, any admissions by the persons charged were patently and indisputably unbelievable because no motor vehicle has more than two cowl lamps so as to violate the cowl-lamp statute. Probable cause cannot rest on such demonstrably false admissions.
D. Summary. The respondent on numerous occasions successfully requested permission from the court to amend simple misdemeanor charges, generally traffic citations, to allege violations of the cowl-lamp statute. At the time he did so, he knew there was no probable cause to believe the defendants in those cases had violated that statute. Therefore, Howe's conduct constituted a violation of DR 7-103(A), prohibiting the institution of charges lacking probable cause. The respondent's ethical duty in this regard is not affected by the requirements for a guilty plea to a simple misdemeanor. Nor does the informed and willing participation of the police officers, the defendants, and the magistrate in the plea bargains at issue here excuse the respondent's violations. DR 7-103(A) means what it says: prosecutors cannot ethically file charges they know lack probable cause.

V. Count II: Mouw Conflict of Interest.

A. Allegations of complaint and Commission recommendation. The Board alleged Michael Mouw was charged with four offenses by the Spencer police department in late 2002 and early 2003. The Board further alleged Howe represented Mouw on one of these charges that was prosecuted by the county attorney and represented both Mouw and the city on the other three matters. The Board also contends Howe represented Mouw on an administrative driver's license problem arising out of one of the criminal charges Howe prosecuted.
The complaint asserts the respondent's representation of Mouw violated several ethical rules: (1) DR 5-105(B)-(C), requiring lawyer to decline or discontinue employment if exercise of independent professional judgment on behalf of client will likely be adversely affected; (2) DR 9-101(B), stating lawyer shall not accept private employment in a matter in which the lawyer had substantial responsibility while a public employee; (3) DR 1-102(A)(5), stating lawyer shall not engage in conduct prejudicial to the administration of justice; and (4) DR 1-102(A)(1), stating lawyer shall not violate a disciplinary rule.
The Commission concluded the Board had proved the respondent violated DR 5-105(B)-(C), DR 9-101(B), and DR 1-102(A)(5), but did not consider the violation of DR 1-102(A)(1) separately from the other disciplinary rules. The Commission recommended a public reprimand for these ethical infractions.
*372 B. Factual findings. The Spencer police department charged Michael Mouw with four offenses: (1) third-degree burglary on December 11, 2002; (2) speeding on December 29, 2002; (3) underage possession of alcohol on December 30, 2002; and (4) violation of a driving instruction permit restriction on February 22, 2003. Mouw did not appear for his hearing on the latter charge, and a conviction was entered.
The Clay County attorney prosecuted the burglary charge. Howe defended Mouw in this case, entering a written plea of not guilty on Mouw's behalf on January 27, 2003. At the same time, Howe prosecuted the three city charges against Mouw in his capacity as assistant city attorney. On April 21, 2003, ostensibly acting as the assistant city attorney, Howe filed a motion to rescind Mouw's conviction on the instruction permit violation. Howe also asked the court "to order the Department of Transportation to expunge any record of this conviction." Magistrate Whittenburg granted Howe's motion.
At some point, Mouw's mother talked to Howe about the charges pending against her son. Howe told her he could not represent her son on the charges he was prosecuting. Nonetheless, Howe said he would contact the police and the county attorney to see what they wanted to do. He then wrote to the police department secretary asking whether the charging officers would contact the county attorney so all four charges could be resolved at once. The officers and the county attorney, without Howe's involvement, then agreed to a resolution of all four cases. Howe subsequently told Mouw and Mouw's mother of the proposed disposition and obtained their approval.
The respondent then wrote to the magistrate, informing her of the disposition of the charges that he "was able to work out." In that letter Howe referred to Mouw as his client, entered a plea of guilty to the possession charge on Mouw's behalf, and moved to dismiss the instruction permit and speeding charges on behalf of the city. He stated that the city wanted no more than the minimum fine on the possession charge, and then requested that Mouw be given a couple of months to pay the fine. He also asked the court to waive the costs on the speeding and instruction permit charges.
Howe billed both the city and Mouw for his dual representation in these matters. Although Howe disclaimed any direct participation in the settlement of the four pending charges, his statement to Mouw for $275 included charges for multiple telephone conferences with Magistrate Whittenburg, police officers and the county attorney "re: 3 Spencer charges and state burglary charges (to reach settlement)."
At some point, Howe was retained to represent Mouw with respect to a notice of suspension issued by the DOT as a result of Mouw's initial conviction on the instruction permit violation. Just seven days after Howe, acting as assistant city attorney, had Mouw's conviction on the instruction permit violation rescinded, Howe wrote to the DOT in an effort to save Mouw's driving privileges. Howe wrote:
Enclosed please find true copies of (1) your official notice of suspension; and (2) a Clay County Court Order rescinding the conviction for violation of instruction permit.
PLEASE CONSIDER THIS LETTER TO BE MY APPEAL AS ATTORNEY FOR MICHAEL GARY MOUW. As there is no conviction, the suspension and requirement of SR-22 insurance is not in order and should be moot.

*373 Would you please correspond directly back to me as attorney for Michael Gary Mouw upon your receipt of this notice?
(Emphasis in original.)
C. Ethical violations. Three aspects of Howe's conduct in the Mouw prosecutions presented conflict-of-interest problems: (1) his simultaneous representation of the city and Mouw on the same charges; (2) his representation of Mouw on the administrative matter arising out of one of the criminal charges; and (3) his representation of Mouw on the burglary charge filed by Spencer police officers. We discuss each separately.
1. Simultaneous representation of the city and Mouw. Howe admitted at the hearing that his facilitation of the disposition of the three city charges through a plea agreement was wrong. We agree. Howe's representation of Mouw on the three charges Howe prosecuted on behalf of the city violated DR 5-105(B), which requires a lawyer to decline employment if the lawyer's exercise of independent professional judgment on behalf of the client will likely be adversely affected. Cf. Iowa Rules of Prof'l Conduct 32:1.7(b)(3) (prohibiting attorney's representation when it involves "the assertion of a claim by one client against another client represented by the lawyer in the same litigation"). Certainly Howe could not exercise independent professional judgment on behalf of the city in prosecuting Mouw on city charges when he was at the same time seeking to have the identical charges dismissed on behalf of the defendant. See 1 Geoffrey C. Hazard, Jr. and W. William Hodes, The Law of Lawyering § 11.3, at 11-8 (2004 Supp.) [hereinafter "The Law of Lawyering"]; cf. In re Matter of Ryan, 824 N.E.2d 687, 689 (Ind.2005) (suspending part-time prosecutor's law license for obtaining international driver's licenses, for a fee, for defendants that he prosecuted for driving without a license, and then accepting licenses for a reduction in charge).
We also think Howe's actions had a prejudicial effect on the administration of justice in violation of DR 1-102(A)(5). Although "there is no typical form of conduct that prejudices the administration of justice," actions that have commonly been held to violate this disciplinary rule have hampered "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes, 588 N.W.2d 121, 123 (Iowa 1999). A treatise considering the ethical problems presented by conflicts of interest has noted that some conflict-of-interest rules protect not only the rights of clients, but also "the integrity of the legal system." 1 The Law of Lawyering § 10.2, at 10-7; see also id. § 11.19, at 11-59 (discussing interests of tribunal and public that are adversely affected by conflicted representation in litigation). As this treatise explains, "the tribunal has an interest in basing its decisionmaking on a full and vigorous presentation of the competing positions." Id. § 11.19, at 11-59. Similarly, "society as a whole has a right to expect that the system not be tainted by resort to hidden and conflicting agendas." Id. § 10.2, at 10-7 to 10-8; see Comm. on Prof'l Ethics & Conduct v. Oehler, 350 N.W.2d 195, 199 (Iowa 1984) (noting conflict-of-interest rules set out in DR 5-105 "are plainly in the public interest"). We think the conflict of interest at issue here is of the type that adversely impacts the administration of justice and erodes the integrity of the legal system. Cf. Iowa Rules of Prof'l Conduct 32:1.7 cmt. [17] (noting representation of adverse parties in litigation is forbidden "because of the institutional interest in vigorous development of each client's position"). Therefore, Howe violated DR 1-102(A)(5).
*374 2. Representation of Mouw before DOT. Howe's representation of Mouw on his administrative license suspension violated DR 9-101(B) which states a lawyer shall not accept private employment in a matter in which the lawyer had substantial responsibility while a public employee.[6] Although the interests of the city and Mouw were not adverse when Howe contacted the DOT on Mouw's behalf, there are special considerations that preclude a government lawyer from accepting successive employment on substantially related matters. This type of conflict has been explained as follows:
[T]he rationale for disqualification is rooted in a concern with the impact that any other rule would have upon the decisions and actions taken by the government lawyer during the course of the earlier representation of the government. Both courts and commentators have expressed the fear that permitting a lawyer to take action in behalf of a government client that later could be to the advantage of a private practice client would present grave dangers that a government lawyer's largely discretionary actions would be wrongly influenced by the temptation to secure private practice employment or to favor parties who might later become private practice clients....
The fear that government lawyers will misuse government power in that way is not idle. Lawyers who represent the government often exercise enormous discretion unchecked by an actual client who oversees the lawyer's work. For that reason a special rule is needed to remove the incentive for government lawyers to take advantage of discretionary decisions with an eye cast toward advantages in future, nongovernmental employment.
Modern Legal Ethics § 8.10.1, at 458; accord Iowa R. of Prof'l Conduct 32:1.11 cmt. [4] (noting representation of successive clients by government lawyer raises risk "that power or discretion vested in [the government] agency might be used for the special benefit of the other client").
Howe's representation of Mouw is a good example of the type of situation the rule seeks to avoid. Howe was certainly aware at the time he filed the motion to rescind Mouw's conviction on the instruction permit violation  ostensibly on behalf of the city  that the conviction had profound consequences on Mouw's driver's license. The fact that Howe subsequently represented Mouw before the DOT in an attempt to have Mouw's license suspension rescinded calls into question whose interests Howe was actually representing when he filed the motion to rescind the conviction.
Howe testified he asked that the conviction be set aside out of fairness to Mouw, who has a learning disability that entitles him to social security disability payments. Howe believed Mouw did not understand a conviction would be entered if Mouw did not attend court on the appearance date stated on the citation. Regardless of Howe's motivation for having the conviction rescinded, his later representation of Mouw was improper. Howe, as the assistant city attorney, had substantial responsibility for the prosecution of the instruction permit charge, and the validity of the administrative suspension was directly related to the outcome of the criminal prosecution. Given these facts, Howe should *375 not have accepted private employment on the DOT matter, and his decision to do so violated DR 9-101(B).
In addition, Howe's representation of Mouw on the license suspension problem prejudiced the administration of justice in violation of DR 1-102(A)(5). See generally EC 9-2 (discussing lawyer's duty under canon 9, and observing that "a lawyer should act in a manner that promotes public confidence in the integrity ... of the legal system"). The respondent's conflicting loyalties in the criminal prosecution deprived the court of "a full and vigorous presentation of the competing positions." 1 The Law of Lawyering § 11.19, at 11-59. Consequently, for the same reasons discussed above in connection with Howe's simultaneous representation of the city and Mouw, we conclude he violated DR 1-102(A)(5).
3. Representation of Mouw on burglary charge. Howe also had a conflict in representing Mouw on the burglary charge that had been filed by city police officers. As Howe testified, he worked closely with the Spencer police officers in his position as the assistant city attorney. He prosecuted the charges the officers filed, and he routinely consulted them about plea agreements. In addition, Howe stated the officers would call him for advice on various matters, including charging decisions.
As the Commission aptly observed, "Howe's independent judgment in his representation of Mouw was likely to be adversely affected by his loyalties to the City of Spencer officers." A leading commentator in legal ethics agrees:
[A] part-time prosecutor in a small town might be reluctant to cross-examine or criticize police officers, on whose testimony he or she relies in prosecuting cases, and so should be disqualified from defending criminal cases in which they may be witnesses.
Modern Legal Ethics § 8.9.4, at 455; accord City Attorney: Defense By, Iowa Ethics Opinion No. 01-03 (Sept. 25, 2001); cf. Iowa R. of Prof'l Conduct 32:1.7 cmt. [6] (stating "a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit"). The Commission concluded, and we concur, that the risk of divided loyalties existed throughout the entire prosecution of the burglary charge, and did not arise only if the case went to trial.
We agree with the Commission that Howe violated DR 5-105(B) in defending Mouw on the burglary charge because his "exercise of independent professional judgment on behalf of [Mouw would] likely be adversely affected." For reasons similar to those discussed above in connection with the other conflicts of interest involving Mouw, Howe also violated DR 1-102(A)(5) by engaging in conduct prejudicial to the administration of justice.

VI. Count III: Towe and Shields Conflicts of Interest.

A. Allegations of complaint and Commission recommendation. The Board alleged the respondent represented two criminal defendants, James Towe and James Shields, on charges initiated by the Spencer police department and prosecuted by the county attorney for Clay County. The Board asserted this conduct violated DR 5-105(B)-(C) (decline or terminate employment if independent judgment likely to be adversely affected), DR 1-102(A)(5) (conduct prejudicial to the administration of justice), and DR 1-102(A)(1) (lawyer shall not violate a disciplinary rule).
*376 The Commission concluded the Board had proved the respondent violated DR 5-105(B)-(C) and DR 1-102(A)(5), and recommended a public reprimand. Once again, the Commission did not consider the violation of DR 1-102(A)(1) separately from the other disciplinary rules.
B. Factual findings. Before we discuss the defendant's representation of Towe and Shields, we first review the standard procedure followed by Howe when asked to represent defendants on charges filed by the Spencer police and prosecuted by the county attorney. Recognizing a potential problem should he be required to cross-examine the charging officers, Howe would tell such defendants that he could not represent them against the Spencer police and that he would have a conflict of interest if he were to go to trial against Spencer police officers. Notwithstanding this conflict, Howe would offer to obtain the police records informally from the county attorney in order to evaluate the case. He would then review the records and give the defendant his opinion as to whether the case could be successfully defended. If the client chose to defend against the charge, Howe would refer the case to another lawyer. If Howe believed there was no defense, he would recommend a second opinion. If the defendant did not want to defend the charge or obtain a second opinion, Howe would contact the prosecutor about the possibility of a plea agreement. Howe would also "take care" of the initial appearance and arraignment. If the defendant ultimately pled guilty, Howe would assist with the plea. The prosecutions involving Towe and Shields fit this pattern.
On November 15, 2003, the Spencer police charged James Towe with operating while intoxicated. On November 26, 2003, the Spencer police charged James Shields with driving while revoked, a serious misdemeanor. Both charges were prosecuted by the county attorney. When approached by these defendants to represent them on the pending charges, Howe followed the procedure outlined above.
In Towe's case, Howe reviewed the arrest documents, spoke with Towe about Howe's opinion of a possible defense, and contacted the county attorney to resolve the case. As a result of Howe's efforts, Towe received a deferred judgment and paid $500 to the Clay County DARE program.
Howe was able to obtain a similar disposition of the driving-while-revoked charge filed against Shields. Howe wrote to Magistrate Whittenburg concerning the case, in effect entering an appearance on behalf of Shields. In the same letter, Howe asked that Shields be released on his own recognizance. The magistrate subsequently entered an order releasing Shields on his own recognizance, noting that the defendant was represented by Howe. At some point, the driving-while-revoked charge was amended to driving with an expired license, a simple misdemeanor, and Shields was fined $100.
C. Ethical violations. For the same reasons discussed above concerning Howe's representation of Mouw on the burglary charge, we think Howe's conduct in representing these defendants on charges brought by the Spencer police was improper. Howe understood there was a conflict if he were to cross-examine a Spencer police officer. But what he did not understand was that the conflict existed throughout his representation of the defendants. Certainly, Howe could not fairly determine whether his client, the defendant, had a valid defense without being influenced by his loyalty to and friendship with the charging officer. As the Commission accurately stated,

*377 Respondent was representing criminal defendants against charges made by one of his other clients, the City of Spencer and its officers. Howe's clients had differing interests and his exercise of independent judgment on behalf of his clients would likely be adversely affected.
For this reason, Howe violated DR 5-105(B) when he represented Towe and Shields, notwithstanding that he limited his representation to the pretrial stage of the proceedings.
Howe's representation of defendants charged by the Spencer police was also a violation of DR 1-102(A)(5). His conflicting loyalties hampered the proper operation of our adversary system, thereby prejudicing the administration of justice.

VII. Count IV: Larson and Olin Dual Representation.

A. Allegations of complaint and Commission decision. The Board alleged that the respondent represented two defendants, Lance Larson and Mavis Olin, in matters that he was also prosecuting as the assistant city attorney. The Board claimed this dual representation violated DR 5-105(B)-(C) (decline or terminate employment if independent judgment likely to be adversely affected), DR 9-101(B) (lawyer shall not accept private employment in a matter in which the lawyer had substantial responsibility while a public employee), and DR 1-102(A)(1) (lawyer shall not violate a disciplinary rule). The Commission determined Howe's actions warranted a private admonition.
B. Factual findings. Lance Larson was charged by a Spencer police officer with reckless driving. In a pleading signed by Howe as "attorney for defendant," Howe entered an appearance on behalf of Larson and entered a not-guilty plea to the citation. A month later he filed a motion for leave to amend on behalf of the city, signing as "attorney for plaintiff." In this pleading, he asked the court to amend the reckless driving violation to a cowl-lamp violation "as the result of a plea agreement." Magistrate Whittenburg allowed the amendment and subsequently accepted Larson's guilty plea to the cowl-lamp citation. Larson was fined $100. Howe billed the city for his time on the Larson prosecution, but he did not bill Larson.
Mavis Olin was Howe's elderly neighbor. Olin was in a traffic accident with a city police car and was issued a citation by a Spencer police officer for failure to yield the right of way at a stop sign. Howe testified that upon hearing of the accident, he visited with Olin at her home. Olin was very concerned about losing her license, so the respondent told her not to worry and that he would "make some calls." Howe then wrote to Magistrate Whittenburg on his law office stationery, stating in part: "Would you please consider this letter to be Mavis' appearance and plea of not guilty for now? I am guessing we will simply cave in down the road and enter no defense." After the charging officer determined that Mavis's insurance would pay for the damage to the city police car, he suggested that the original citation be amended to a cowl-lamp violation. Olin eventually pled guilty to a cowl-lamp charge, and was fined $50.
Howe testified at the hearing before the Commission that he did not represent these defendants and did not intend to represent these defendants. He explained that he viewed his role as that of a public servant; so it was not unusual for him, upon being contacted by a defendant, to offer to make a call or drop a line to the magistrate to take care of the appearance date so the defendant would not have to come to court. A defendant's appearance *378 would delay disposition of the charge and give Howe time to talk with the charging officer about a possible plea bargain. Generally, Howe would simply communicate to the magistrate that he was in the process of negotiating a plea agreement with the defendant and that she should indicate a not-guilty plea for the time being. Both Howe and the magistrate testified such communications are not unusual, and as a practical matter, are necessary to keep the matter moving toward a resolution when the defendant is unrepresented and not familiar with the legal process. Howe said he meant to follow the same procedure in the Larson and Olin cases: to simply pass along the defendants' wishes to the magistrate.
We understand that when a defendant is unrepresented the prosecutor is often thrust into the position of having to communicate the pro se defendant's wishes to the court. But Howe did more than that here. See generally Oehler, 350 N.W.2d at 199 (stating conflict-of-interest rules "are to be rigidly adhered to, and strictly enforced"). He filed a formal appearance for Larson and did the equivalent for Olin in his letter to the magistrate. His later contention that he was not really representing these defendants is belied by the court files. See City of Coralville v. Iowa Dist. Ct., 634 N.W.2d 675, 679 (Iowa 2001) (holding attorney was representing individual on whose behalf he filed an appearance).
C. Ethical violations. Howe's simultaneous representation of Larson and Olin, on the one hand, and the city on the other created an obvious and direct conflict of interest because at the same time he prosecuted the criminal charges against these defendants, he was defending them against the same charges. Howe could not exercise independent professional judgment under these circumstances, and therefore, he violated DR 5-105(B).

VIII. Sanction.

To determine the appropriate sanction,
we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.
Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen, 670 N.W.2d 161, 164 (Iowa 2003). In considering these factors, we keep in mind the underlying purposes of attorney discipline:
"Attorney disciplinary proceedings are not designed to punish, but rather to determine the fitness of an officer of [the] court to continue in that capacity, to insulate the courts and the public from those persons unfit to practice law, to protect the integrity of and the public confidence in our system of justice, and to deter other lawyers from engaging in similar acts or practices."
Comm. on Prof'l Ethics & Conduct v. Vesole, 400 N.W.2d 591, 593 (Iowa 1987) (citation omitted). Considering the factors pertinent to a determination of the proper discipline, as well as the objectives of such discipline, we conclude a more severe sanction than a public reprimand is warranted.
Although we believe Howe was always motivated by the desire to resolve city charges in a fashion that was just to the city as well as to defendants, he often crossed the line into unethical conduct in disposing of criminal charges. He routinely caused cowl-lamp charges to be filed that were not supported by probable *379 cause. In addition, he had little appreciation for the effect a conflict of interest had on his ability to meet his professional obligation to his clients. Howe acknowledged that he saw no problem in defending clients against criminal charges filed by Spencer police officers, even though he knew he could not take the case to trial because his loyalties to the police officers would prevent him from effectively cross-examining the officers if they testified. What he failed to recognize was that these same loyalties would adversely affect his ability to dispassionately assess the strength of the officer's case against his private practice client. In addition, Howe represented criminal defendants and the city in the same case on more than one occasion. The inappropriateness of this dual representation should have been clear to him. Howe's conflicts of interest affected not only his ability to effectively represent his clients, but also compromised his role as an officer of the court, depriving the court of the advocacy that is a fundamental component of our system of justice.
Even though Howe was not motivated by any personal gain, his failure to understand the problem of divided loyalties reflects poorly on his fitness to practice law. On the other hand, based on his testimony at trial and his general reputation as a person who strives to do the right thing, we are confident that he will not repeat his mistakes in the future. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Isaacson, 565 N.W.2d 315, 317 (Iowa 1997) ("We consider a lawyer's general character for honesty ... in applying sanctions.").
Perhaps the most troubling aspect of Howe's misconduct is the impact of his actions on public confidence in our system of justice. The public's trust in the courts depends upon citizens' belief in the integrity of the court process. When people learn that a city prosecutor represents the very defendants he is prosecuting, they will not view the justice system as fair or impartial. They will also rightly question the motivation of a prosecutor who agrees to a disposition favorable to a criminal defendant and then later uses the favorable result for the advantage of the defendant whom the prosecutor now represents. The respondent's repeated disregard of his conflicting loyalties generates distrust and skepticism of the courts, and reflects adversely on the entire bar. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lane, 642 N.W.2d 296, 302 (Iowa 2002) (noting, in imposing discipline, that respondent's conduct "jeopardized the integrity of the Bar and the public's trust in the legal profession").
Unfortunately, Howe's routine reduction of traffic citations to cowl-lamp violations has a similar impact. Admittedly, plea bargains are a common and useful tool for resolving criminal cases. But when charges are filed that are known to all to be bogus and guilty pleas to those charges are accepted in order to allow defendants to escape the adverse consequences of the offenses they actually committed, there can be only one result: respect for the court system is diminished and the public's confidence in the integrity of the criminal justice system is seriously undermined. While the disposition of a traffic offense in the manner employed here may be the expedient way to dispose of a citation to the satisfaction of the parties involved, it sends the wrong message to the public. It makes a mockery of the justice system when a defendant is punished for violating a statute that he unquestionably did not violate.
There are mitigating factors. Howe has not been previously disciplined. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams, 675 N.W.2d 530, 533 (Iowa 2004) (concluding lack of prior discipline *380 was a mitigating factor). He acknowledged wrongdoing. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Tofflemire, 689 N.W.2d 83, 93 (Iowa 2004) ("A mitigating factor is the attorney's recognition of some wrongdoing."). In addition, we think Howe's unethical conduct resulted from his desire to facilitate the disposition of criminal cases to the mutual satisfaction of the defendant and the police officers, and was not done with the thought that he was manipulating the criminal process or would obtain any personal financial benefit. Compare Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Murphy, 669 N.W.2d 254, 257 (Iowa 2003) (stating attorney's good-faith belief that his actions were in client's best interest was a mitigating factor), and Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel, 634 N.W.2d 652, 656 (Iowa 2001) (noting as a mitigating circumstance that lawyer's unethical conduct was not the product of a dishonest character), with Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Remer, 646 N.W.2d 91, 96 (Iowa 2002) (noting suspension supported by fact that attorney's egregious pattern of self-dealing was motivated purely by his desire for personal gain). See generally Iowa Code of Prof'l Responsibility preamble and scope [19] (stating severity of sanction depends on all the circumstances, including the willfulness of the violation).
We have also considered the fact that Howe is not the only county attorney who has plea bargained traffic citations down to cowl-lamp violations.[7] But even if this plea-bargaining practice were commonplace, that fact would not be a mitigating circumstance. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rauch, 650 N.W.2d 574, 579 (Iowa 2002). In Rauch, the respondent, charged with having improper ex parte communications with judges, argued that "such communications `are a fact of life.'" Id. We held that "Rauch's contention that everyone does it" was not a mitigating factor, noting the ethics rules do "not say a lawyer shall not violate a disciplinary rule unless such violation is commonplace." Id. Similarly, the fact that the cowl-lamp plea bargains did not originate with Howe, but had been done for some period of time before he became an assistant city attorney in 1976, is also not a mitigating circumstance. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Vinyard, 656 N.W.2d 127, 132 (Iowa 2003) ("The fact that the lawyer did not create the idea or set the criminal conduct into motion does not work as a mitigating factor."); Ky. State Bar Ass'n, 503 S.W.2d at 482 ("Though it is regrettable that the respondent finds himself the sacrificial goat while others equally at fault have gone unscathed, it cannot be a defense."). Nonetheless, given the fact this court has never before given guidance on the limitations placed on plea-bargained charges by DR 7-103(A), a public reprimand might be a sufficient sanction if that were the only ethical infraction in this case. Cf. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct *381 v. Apland, 577 N.W.2d 50, 60 (Iowa 1998) (imposing public reprimand for attorney's unethical handling of advance fee payment because court had not previously addressed the proper handling of such payments). Unfortunately, it is not. Howe committed serious conflict-of-interest violations that alone warrant suspension.
One aggravating circumstance that supports this sanction is Howe's experience. See Vinyard, 656 N.W.2d at 131 (holding substantial experience in the practice of law is an aggravating factor). Howe has practiced law since 1975, and has served as a prosecutor since 1976. He should have known better than to serve clients with divided loyalties. In addition, as we have already noted, Howe's ethical misconduct was not an isolated event. See id. at 132 (stating pattern of misconduct is an aggravating factor). His failure to understand the most fundamental aspects of his ethical obligations to his clients and the court permeated his criminal practice and the performance of his prosecutorial duties, however well-intentioned his conduct might have been.
In summary, we are convinced Howe's license should be suspended. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters, 603 N.W.2d 772, 773 (Iowa 1999) (license suspended for conflict of interest and other misconduct); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner, 599 N.W.2d 721, 722-23 (Iowa 1999) (license suspended for conflict-of-interest violation); Isaacson, 565 N.W.2d at 318 (license suspension for fraud and acting with a conflict of interest); Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sikma, 533 N.W.2d 532, 537-38 (Iowa 1995) (license suspended for conflict-of-interest violation); Comm. on Prof'l Ethics & Conduct v. Schooler, 482 N.W.2d 426, 426 (Iowa 1992) (license suspended for conflict-of-interest violation and other misconduct). We do not impose this discipline lightly, as we are well aware the suspension of one's license is a significant sanction regardless of the length of the suspension. This discipline is warranted, however, by the fundamental and repetitive nature of the ethical violations that occurred here, our desire to maintain the reputation of the bar as a whole, the need to protect the integrity of and public confidence in our system of justice, and our wish to deter other lawyers from engaging in similar acts or practices. See generally Lane, 642 N.W.2d at 302 ("Mitigating factors alone do not overcome our responsibility to the public or to the legal profession.").
Although there are no established rules for the duration of a suspension imposed for conflict-of-interest violations, we strive to be consistent from one case to another, despite the factual distinctions that make each case unique. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy, 684 N.W.2d 256, 261 (Iowa 2004). Other cases involving a conflict-of-interest show dispositions ranging from a public reprimand to a one-year suspension, depending on the pervasiveness of the prohibited conduct, the existence of other ethical violations, and the presence of mitigating or aggravating factors.[8]See Walters, 603 N.W.2d at 778 (three-month suspension); Wagner, 599 N.W.2d at 723 (three-month suspension); Isaacson, 565 N.W.2d at 318 (six-month suspension); Sikma, 533 N.W.2d at 533 (three-month suspension); Comm. on Prof'l Ethics & Conduct v. Jackson, 492 N.W.2d 430, 435 (Iowa 1992) (public reprimand); Schooler, 482 N.W.2d at 426 (one-year suspension).
*382 We think the pervasiveness of the misconduct in the present case and the prejudicial impact it has on the bar and the criminal justice system call for a longer period of suspension than the three-month suspension ordered in most of the cited cases. Therefore, we suspend Bradley Howe's license to practice law in this state indefinitely with no possibility of reinstatement for a period of four months from the date of the filing of this opinion. This suspension applies to all facets of the practice of law. See Iowa Ct. R. 35.12(3). Upon application for reinstatement, Howe shall have the burden to establish that he has not practiced during the period of suspension and that he meets all requirements of Iowa Court Rule 35.13. The costs of this proceeding are taxed against the respondent.
LICENSE SUSPENDED.
All justices concur except CARTER, J., who concurs specially and LARSON, J., who dissents.
CARTER, Justice (concurring specially).
Notwithstanding Iowa Ethics Opinion No. 87-13 (February 12, 1988), I am not convinced that discipline should be imposed on the basis of Howe's acceptance of misdemeanor guilty pleas to equipment violations that had not occurred where the alleged offenders agreed to that disposition.
I am satisfied, however, that the other charges that were sustained are serious enough to warrant the discipline being imposed by the court.
LARSON, Justice (dissenting).
I dissent from Division IV, involving the alleged "cowl lamp" ethical violations. The facts are largely as stated in the majority opinion. Briefly stated, this respondent is charged with violating our disciplinary rules by amending moving-violation charges to nonmoving ones, usually involving cowl lamps. The basis of the majority's holding is that the respondent violated DR 7  103(A) because the guilty pleas to the nonmoving violations were not supported by probable cause.
Under DR 7  103(A), a prosecutor
shall not institute or cause to be instituted criminal charges when the lawyer knows or it is obvious that the charges are not supported by probable cause.
In the majority's attempt to apply this rule to Howe, it confuses the concepts of probable cause and a factual basis for the guilty pleas. It quotes a generic definition of probable cause from Webster's Third New International Dictionary, but for criminal prosecutions in Iowa, "probable cause" has a well-established meaning:
When a peace officer observes a violation of our traffic laws, however minor, the officer has probable cause to stop a motorist. "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it."
State v. Tague, 676 N.W.2d 197, 201 (Iowa 2004) (citations omitted).
To arrest a defendant based on probable cause, an officer
need not have firm evidence which might lead to a conviction, or even to an indictment, but merely sufficient information to cause a reasonable man to believe that defendant was involved in [a crime].
State v. Freeman, 297 N.W.2d 363, 366 (Iowa 1980).
Probable cause for the original arrest (or most likely a citation in lieu of arrest) was required to bring these traffic offenders *383 into the judicial system. In the prosecution of those citations, the focus of the parties was redirected (almost always by the defendant or his counsel) from a moving to a nonmoving violation. However, the probable cause that brought the defendants into the judicial system in the first place did not disappear, as the majority apparently concludes.
The majority concedes that the original charges in these cases were supported by probable cause. I contend that, because probable cause supported the original charges, it necessarily supports the lesser ones. Our rules of criminal procedure allow a prosecutor to agree to accept a plea to a lesser or related offense. Under our rules of criminal procedure,
[t]he prosecuting attorney and the attorney for the defendant may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty to a charged offense or to a lesser or related offense, the prosecuting attorney will make a charging or sentencing concession.
Iowa R.Crim. P. 2.10(1) (emphasis added).
In this case, the "cowl lamp" offenses are both "lesser" and "related" to the more serious moving offenses. They are lesser because, unlike moving violations, they do not adversely affect a driver's license, and they are "related" because they arose out of the same incident. Under analogous facts, a Wisconsin court held that
when a plea is pursuant to a plea bargain, the trial court is not required to go to the same length to determine whether the facts would support the charge as it would if there were no plea bargain.... This latter rule reflects the reality that often in the context of a plea bargain, a plea is offered to a crime that does not closely match the conduct that the factual basis establishes.... [W]e conclude that in a plea bargain context, the requirements of [the guilty-plea statute] are met if the trial court satisfies itself that the plea is voluntary and understandingly made and that a factual basis is shown for either the offense to which the plea is offered or to a more serious charge reasonably related to the offense to which the plea is offered. This is the case even when a true greater- and lesser-included offense relationship does not exist.

State v. Harrell, 182 Wis.2d 408, 513 N.W.2d 676, 680 (Ct.App.1994) (emphasis added); accord State v. Herrera, 131 N.M. 22, 33 P.3d 22, 28 (Ct.App.2001). In Howe's case, the Board does not contend that a factual basis was lacking for the more serious moving offenses. It is only when those charges are changed  at the instance of, or at least with the acquiescence of, the defendant  that the factual basis becomes an issue. Cowl lamp violations, of course, are not included offenses in speeding or other moving violations. However, rule 2.10(1), like the rule in Herrera, allows plea bargaining to "lesser offenses" and does not require that the lesser offenses be lesser than included offenses.
Of course, in guilty pleas to offenses above the traffic level, a factual basis must be established. However, the establishment of a factual basis is not required for a guilty plea to a traffic offense. This is obvious from an examination of our criminal rules, which allow
the court or the clerk of the district court [to] enter a conviction pursuant to the defendant's written appearance and may enter a judgment of forfeiture of the [defendant's] collateral in satisfaction of the judgment and sentence.
Iowa R.Crim. P. 2.72. In fact, the majority here disavows any theory that the lack of a factual basis caused the prosecutor to violate DR 7  103(A); it simply treats the *384 lack of a factual basis as if it were a lack of probable cause. The two are clearly not the same.
Because DR 7  103(A) only prohibits charging without probable cause and because probable cause was present in these cases, the rule is inapplicable by its terms. By mixing the concepts of factual basis and probable cause, the majority effectively attempts to pound a square peg through a round hole. DR 7  103(A), I submit, was never intended to provide a basis for disciplining a prosecutor under circumstances such as these, in which probable cause existed sufficient to bring the defendants into the court system.
The majority cites no cases applying DR 7  103(A) under similar facts, and I submit there are none. Rather, the rule was aimed at prosecutors who overcharge, usually in the hope of getting guilty pleas to lesser offenses. See, e.g., Thompson v. State, 61 Wis.2d 325, 212 N.W.2d 109, 111-12 (1973) (applying DR 7  103(A), and stating: "It is ... an abuse of discretion for a prosecutor to bring charges on counts of doubtful merit for the purpose of coercing a defendant to plead guilty to a less serious offense."); Locklear v. State, 86 Wis.2d 603, 273 N.W.2d 334, 338 (1979) (citing DR 7  103(A) and quoting ABA's Standards Relating to the Prosecution Function and Defense Function, Standard 3.9(e), "The prosecutor should not bring charges or seek charges greater in number or degree than he can reasonably support with evidence at trial."). The rule, I believe, is also aimed at unscrupulous prosecutors who file criminal charges to effect a civil settlement. Cf. State ex rel. Nebraska State Bar Ass'n v. Gobel, 201 Neb. 586, 271 N.W.2d 41, 42 (1978) (applying DR 7  105(A), which expressly prohibits such conduct).
DR 7  103(A) is penal in nature because it may be the basis for severe financial sanctions. In criminal cases, which are analogous, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Rewis v. United States, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493, 497 (1971). We should give lawyers the same benefit of the doubt in enforcing disciplinary rules of doubtful application. I believe it is palpably unfair to apply DR 7  103(A) to this respondent because neither the rules nor any decisions of this court at the time of these alleged ethical violations gave any indication that the rule covers disciplinary cases like this, in which probable cause exists but a factual basis does not.
Howe, in support of his resistance to the ethics charges, claims he was blindsided by the board's plea-bargaining count. He complains, with justification, that:
The first statement by [the supreme] court that a factual basis is required for conviction of simple misdemeanors, apparently even where plea bargains are involved, appeared in the court's press release of February 24, 2004, in the wake of [newspaper] stories that gave rise to the present disciplinary proceeding. Before then, Iowa law was certainly not clear on the issue.
As the majority notes, the practice of reducing moving violations to nonmoving ones has been widespread. Howe had been involved in 174 such cases himself, and his predecessor had done so "for many years" before him. We may in fact take judicial notice that the practice has been widespread throughout Iowa for many years.
The majority opinion will cause many past and present prosecutors, and also defense counsel,[9] to wait for "the other shoe *385 to drop" with the specter of ethical charges being filed for violating a rule that is only arguably applicable and whose application could not reasonably have been foreseen.
I believe the Grievance Commission correctly dismissed this charge, and I would affirm it on that issue.
NOTES
[1] Additionally, parties to a grievance proceeding are always given an opportunity to address the recommended sanction. In the notice of submission routinely sent by this court to the attorneys representing the Board and the respondent, they are told that "regardless of whether an appeal has been taken, either party may file ... a statement in support of, or in resistance to, the grievance commission's recommended sanction."
[2] Actually, not all cases involved traffic citations. One plea agreement concerned a defendant charged with theft. This defendant was required to plead guilty to two charges of cowl-lamp violation in order to avoid prosecution on the theft charge. Another defendant was originally charged with public intoxication, a charge later reduced to a cowl-lamp violation.
[3] This ethical obligation has been carried forward to the Iowa Rules of Professional Conduct, which became effective on July 1, 2005. Rule 32:3.8 states: "The prosecutor in a criminal case shall ... refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Iowa R. of Prof'l Conduct 32:3.8(a).
[4] Because a prosecutor's ethical duty rests on the requirement of probable cause for the criminal charge and not on the need for a factual basis for the ultimate guilty plea, we do not consider whether guilty pleas to nonmoving traffic violations require a factual basis or whether a court accepting such pleas must ascertain whether a factual basis exists. Our decision rests solely on the prosecutor's obligation to file only those charges supported by probable cause.
[5] The Board introduced documentation of Howe's participation in the filing of the cowl-lamp charges. In one such exhibit, a motion for leave to amend, Howe stated:

COMES NOW the plaintiff, by its assistant attorney [Howe], and it hereby moves the Court for leave to amend the speeding citation herein over to a charge of cowl lamps in violation of Section 321.406, The Code of Iowa, and Section 7-2-7B, City Code of Ordinances of Spencer, Iowa.
(Emphasis added.)
[6] This concept is also found in our new rules. See Iowa R. of Prof'l Conduct 32:1.11(a)(2) (prohibiting lawyer who formerly served as government employee from representing "a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee" unless the government consents).
[7] The record does not contain evidence from which we can conclude whether prosecutors statewide engaged in the negotiation of pleas to cowl-lamp charges. Our sense is that such is not the case. In any event, the extent of this practice is not a proper subject of judicial notice. Judicial notice may only be taken of a fact that is

not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
Iowa R. Evid. 5.201(b). Whether this practice is widespread and longstanding throughout the state is not generally known nor is it "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
[8] We have located no prior Iowa disciplinary cases involving a violation of DR 9-101(B).
[9] The ethics opinion relied on by the majority advised that:

It is improper for a prosecuting lawyer and for a defendant's lawyer to enter into a plea agreement under which a prosecutor files charges that are not supported by underlying facts and to which the defendant agrees to plead or is expected to plead guilty.
(Emphasis added.) Plea Bargaining  Plea Not Supported by Facts, Iowa Ethics Op. No. 87-13 (February 12, 1988).